THE SOUTHERN KANSAS RAILWAY COMPANY v. W. W. PAINTER.

1. IMPEACHMENT OF WITNESS—*Contradictory Deposition*—*Error.* Where the plaintiff in an action to recover damages for personal injuries makes statements on the witness stand concerning matters vital to the case substantially different from those contained in a deposition, which he admits having signed, but denies the entire correctness of, it is error for the court to refuse to permit the defendant to read in evidence those parts of the deposition tending to contradict his testimony; and it is wholly unimportant whether such deposition has been filed with the clerk or is admissible as a deposition.

2. SIMILAR ACCIDENT —*Incompetent Evidence.* Declarations of a conductor of another train, made at the time of a similar accident at the same place, and proof of the facts connected with such other accident, are held to have been improperly admitted in this case.

*Error from Sumner District Court.*

ACTION by *Painter* against the *Railway Company*, to recover damages for bodily injuries. Judgment for plaintiff. The defendant brings the case to this court. The opinion states the facts.

*A. A. Hurd, Robert Dunlap,* and *O. J. Wood,* for plaintiff in error.

*Sam. D. Pryor,* for defendant in error.

The opinion of the court was delivered by

ALLEN, J.: W. W. Painter commenced this action in the district court of Cowley county. A change of venue was taken to Sumner county. The petition alleges, among other things, that, while a passenger on a freight train, in charge of certain live stock which he was shipping, he was injured, through the negligence of the defendant. The particular negligence charged is that.

"Plaintiff was notified by the conductor in charge thereof that the said train and car of the said defendant would stop on the said road of the said defendant at or near Chanute, at

or near the Neosho river, and the said conductor requested this plaintiff that when the train stopped at said station, which he said would be the next time it stopped, that the said plaintiff should get off and go forward to the car in which said stock was, so that the said defendant could water said stock; that, pursuant to said request of said conductor, the agent of said defendant in charge of said train of cars, and after the said train and car had stopped as stated it would do, and the said conductor and brakeman left the car, this plaintiff stepped off of said car, at the rear end thereof, and intending to alight on the ground, but said car was standing on a bridge, and this plaintiff, instead of alighting on the ground, stepped onto said bridge, slipped and fell through and over said bridge, dislocating, fracturing and breaking his shoulder," and causing other injuries. "That it was in the nighttime and of a dark night; that the said defendant wholly failed and neglected to give this plaintiff any notice of there being a bridge there, but, on the contrary, notified him that it was the place for him to get off, so as to designate the cars in which said live stock were, that it might be watered then and there.".

It is claimed that it was negligent for the conductor to direct the plaintiff to get out of the cars at a place of danger; that the plaintiff had a right to assume that the place where he was told to alight was a safe place. The jury returned a verdict in favor of the plaintiff for $3,000, and judgment was rendered accordingly.

The railway company brings the case here, alleging many errors. It is claimed that the undisputed facts of the case show that the plaintiff's injuries were the result of his own negligence in stepping off the caboose on a dark night, without taking any light, or making any examination of the place where he was alighting. It is urged that the negligence of the plaintiff was the direct and proximate cause of his injury, and, no matter what the conductor may have said, the plaintiff's negligence is of such character as to preclude his recovery. There is force in this contention, yet we are not prepared to say that the case is so clear as to make it a question of law for the court. If the conductor was acquainted with the surroundings of the place where the train was to

stop, knew it to be dangerous, and directed the plaintiff to get off the car in such manner as to lead him to believe that he could do so safely, we think it a matter for the jury to say whether the failure of the plaintiff to take proper precautions, under all the circumstances, was negligence.

The principal question of fact litigated was, as to what was said to the plaintiff by the conductor, and as to the manner in which the plaintiff came to be injured. As to conversations between the conductor and the plaintiff, the evidence was conflicting. The plaintiff himself testified: "He [the conductor] said they would attend to the watering of the hogs. I said that they had promised that before, and the hogs were suffering, and I wanted them watered right away. He said, 'If you want those hogs watered, there are so many cars that you will have to go forward and get on the hog car.' And I told him that I could not do that; that I did not like to run on top of the cars, and he said, 'Damn it, get off on the side and go up to the side of your car, and designate the car.' He said, 'It is dark, and the boys could not tell the car.' I asked him how far it was to where they would water the hogs. He said, 'It will be very soon; we will get there in a very few minutes.' At that time the whistle blew for a station, and he said, 'That is the water station; now get off of the car and go forward and designate the car that is to be watered.' About that time he walked out of the car, and I walked out as soon as he said that to me." He testified that he stepped down off the steps, supposing that he was stepping on the ground; that with one foot he stepped on something solid, and then fell headforemost on the ground below.

On cross-examination, the plaintiff was asked with reference to statements he had made in a deposition taken before John H. Fazel, a notary public at Winfield. Some of the statements contained in the deposition he denied having made. He admitted that a deposition had been taken, and that the signature to it was his, but claimed that it was taken down in shorthand by the stenographer and written out afterwards, and that it was not correctly written. The defendant offered

in evidence those portions of the deposition concerning which the plaintiff had been interrogated. To this the plaintiff objected, "because there is no evidence that this deposition has been on file in this case, or is now on file in the case, and for the further reason that there has been no such deposition on file one day before the commencement of this trial." The court sustained the objection. In this deposition the following testimony, referring to the conversation with the conductor, appears:

"Ques. Did he say anything to you about getting off of the train at that point? Ans. He told me to go forward.

"Q. I did not ask you that; answer my question. Did he ever tell you to get off the train and go forward? A. He never told me how to go forward; did not tell me get off, or how.

"Q. Where was he when the train stopped? A. I cannot tell you.

"Q. Where was he when the train whistled? A. I can't tell you.

"Q. I thought you said that he simply told you to go forward and designate the car. A. Well, ——

"Q. Did he at that time tell you to get off of the car? A. I did not know that he did, now.

"Q. If he had told you to get off, you would have remembered it, would you not? A. I think so.

"Q. He merely told you to go forward and show the boys the car, did he? A. Yes, sir.

"Q. That is all he said about that, is it? A. That is all he said about getting off the car. He told me to designate the car the hogs were in, and they would stop and water them at the next station."

In support of this ruling of the court, counsel for defendant in error advances the following propositions:

"(1) That the deposition was not admitted to have been correctly written down, but was testified by plaintiff on the trial to having been incorrectly written down. (2) That it was not filed one day before trial. (3) That the deposition was not offered as a whole. (4) That the witness Painter was present in court and testified, and being so present, his deposition was not admissible. (5) That every of the portions

offered did not contradict the testimony of Painter, and the deposition as a whole, taken together, was corroborative of Painter's testimony on the trial."

None of these reasons are sound. In order to contradict a witness on the stand with his own words written at another time and place, it is not necessary that he should admit that they were correctly written down. The fact that they occur in the deposition to which his signature is appended is at least some evidence that they are his words. He should not sign a deposition without knowing what is contained in it. The second, third and fourth propositions are upon the theory that the deposition was offered as a deposition. That is an error. The deposition was offered for the purpose of impeaching the plaintiff's testimony, by showing that at another time and place he had made statements, under oath, inconsistent with those made to the jury from the witness stand. While the deposition could not be used as a deposition when the plaintiff was present in court, and testified as a witness, like any other declaration of the witness to which his attention had been called, it could be used for the purposes of impeachment. It need not have been under oath. A letter stating the facts differently from the manner in which he testified to them would be admissible for the purpose of impeachment. So, too, would verbal statements out of court in the hearing of other witnesses, to which his attention had been called, be admissible for the same purpose. The use of such testimony is so common that it is hard to understand how an objection to it could be seriously urged. This is true as to the impeachment of all witnesses, but where the declaration is made by a party to the suit it is admissible as an admission, whether his attention be called to it or not. (*Railway Co. v. Butts*, 40 Kas. 159.) The error in excluding this testimony is of such importance as to require a reversal of the case.

It was also error to allow the plaintiff not only to prove that another accident similar to the one which befell plaintiff

1. Impeachment of witness— contradictory deposition— error.

happened at the same place, but to prove the

**2. Similar acci- dent—incompe- tent evidence.** statements of the conductor at that time. The reasons given in support of this testimony are not sufficient. The fact that another accident happened at the same place does not prove, nor necessarily tend to prove, that the defendant was negligent at this particular time. It is said that as there was conflicting testimony by the witnesses, the fact of another similar accident happening at the same place might properly be shown, in order to harmonize the testimony, and raise an inference that the witnesses for the defendant, who were not acquainted with the plaintiff, referred to the accident to Thompson. It was of course competent for ʈ plaintiff on cross-examination to inquire as to all those n ers which would tend to show that the defendant's witnesses referrred to the other accident. It was also proper to show by any witnesses that the defendant's witnesses were not present at all at the time the accident happened to plaintiff. For these purposes, however, it was not proper to enter into the details of the other accident.

As the errors above noticed require a reversal of the case, we do not deem it necessary to comment specially on the instructions, which are faulty in some particulars. Nor do we deem it necessary to lay down any rules for the guidance of the court on a retrial of the case, as the questions involved are not complicated, and the law applicable has been well settled by former adjudications of this court.

The judgment is reversed, and a new trial ordered.

All the Justices concurring.