## Walker v. Louisville Railway Company.

(Decided March 17, 1914.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch No. 4).

Street Railroads—Regulation and Operation—Injuries to Persons
On or Near Tracks.—It is the duty of the motorman in charge of
a street car approaching a place where passengers customarily
cross the tracks, near or practically on a highway crossing, to
keep the car under such control that it can be stopped at a mo-
ment's notice; to give the usual signals of its approach; to main-
tain a lookout; and to use ordinary care to prevent injury to per-
sons on or so near the tracks as to endanger their safety.

R. C. KINKEAD, BENNETT H. YOUNG and EDWARDS, OGDEN
& PEAK for appellant.

FAIRLEIGH, STRAUS & FAIRLEIGH and EUGENE R. ATTKIS-
SON for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

The Seventh Street Park line of the Louisville Rail-
way Company extends beyond the city limits of Louis-
ville a couple of miles to what is known as Jacobs or
Iroquois Park. Just before this park is reached, the
street railway line, which runs north and south, crosses
over what is known in the record as the Boulevard.
There is a double track at this point, and on the south
side of the Boulevard, which runs east and west, and on
the west side of the west track, there is a cinder plat-
form where the cars stop for the Park. The car going
out runs on the west track, passes over the Boulevard
and by this cinder platform, stopping there if required,
to discharge passengers, and then continues south about
two hundred and fifty feet from said platform, goes
around a loop, and starts upon its return journey, com-
ing in on the east track, past the Park stop, across the
Boulevard, and towards the city.

On the second day of January, 1913, about six o'clock
in the evening, Mrs. Elizabeth G. Walker was a passen-
ger on an outgoing car of the Louisville Railway Com-
pany, and alighted therefrom at the cinder platform or
station above mentioned, on the west side of the west
track. After alighting from the car, which proceeded
on its way, Mrs. Walker raised an umbrella, the night
being dark and stormy, and started diagonally across

the two tracks in a northeasterly direction towards a Park guard-house, which was located on the Boulevard and east of the tracks, where she expected her husband to meet her with a conveyance. She says she remembers nothing after she stepped from the car and raised her umbrella. However, the evidence shows that she crossed the west track, and just as she was about to step upon the east track, she was struck by a car and injured. The car which struck her was one which was running ahead of the car from which she had alighted, and was on the loop at the time she alighted from the car upon which she was a passenger. The car from which she alighted, immediately after she alighted therefrom, had proceeded toward the loop, passing at about four car lengths, the incoming car which struck Mrs. Walker.

For the injuries received by her, Mrs. Walker sued the Louisville Railway Company in the Jefferson Circuit Court; and the jury found for the defendant; plaintiff appeals.

1. Appellant insists that the court erred in her prejudice in instructing the jury.

The court told the jury that it was the duty of the motorman, as he approached the station at Iroquois Park, to have his car under such control that it could be stopped at a moment's notice; to give the usual signals of its approach; to keep a lookout ahead; and to exercise ordinary care to prevent injury to persons on or so near said track as to endanger their safety; and that if the motorman failed to discharge any of these duties, and such failure caused the plaintiff's injury, they should find for her. The court also gave the usual instruction on contributory negligence.

Appellant insists that the court should have instructed the jury that "it was the duty of the motorman in charge of defendant's incoming car, as he reached the station at Iroquois or Jacobs Park, where the car upon which the plaintiff was riding had stopped to discharge passengers, to have brought his car to a complete stop, and not to have started the same until he was satisfied that no passengers alighting from said car were going to cross the track upon which the car under his control was being operated."

There would be more force in appellant's argument had the car from which she alighted been still standing at the cinder platform, and the injury been received as she emerged from behind that car. But such is not the

state of facts disclosed by the proof. The evidence shows without contradiction that the car from which she alighted was half-way to the end of the loop when she was struck, having proceeded on its way immediately after she alighted therefrom.

The instruction that was given, as set out above, was based upon the rule announced by this court in the case of Louisville Railway Company v. Hudgins, 124 Ky., 80, 30 R., 316, 98 S. W. 275, 7 L. R. A. (N. S.), 152. In that case, the facts were that a passenger alighted from a car on the north track in a city street, passed around the rear of that car and out on to the south track, and was there struck by a car approaching on that track, while the car from which the passenger had alighted was still standing. Upon such a state of facts, the court laid down this rule: that when a car had been stopped at the usual place for discharging passengers, it is the duty of those in charge of an approaching car on the other track, to have it under such control that it may be stopped at a moment's notice so that persons who may have alighted from the standing car may cross the track safely. It is manifestly dangerous, while passengers are alighting from a car, to permit another car, not under perfect control, to run by it on the adjacent track, as the motorman can not discover the peril of the persons coming from behind the standing car and who are attempting to cross the track, in time to prevent injury; and it must be anticipated that persons who have alighted from a standing car at a street crossing, may attempt to cross the street immediately behind it.

But no such state of facts is presented in the case at bar. Here, plaintiff alighted upon a cinder platform at the side of the tracks, provided for that purpose, not in the middle of a city street. She was in a place of safety when she alighted from the car. She did not pass around the rear of a standing car and out on to the other track in the path of a car approaching on that track. On the contrary, she left a place of safety where she had alighted, and after the car had proceeded on its way, she started diagonally across the tracks toward the Boulevard over which the car had just passed, and was so engaged when injured.

Under the state of facts presented in this record, it was, as the court instructed the jury, the duty of the motorman to have his car under such control that it could be stopped at a moment's notice; and to give the

usual signals of its approach; and to keep a lookout ahead; and to exercise ordinary care to prevent injury to persons on or so near the track as to endanger their safety. But such instruction was proper, not because of the rule laid down in the Hudgins case, for a similar state of facts was not there involved; but because there was proof in the record that it was the custom of persons alighting on that cinder platform to cross the tracks diagonally at that point just as the plaintiff was crossing them; and because it was shown in evidence that the plaintiff was struck on or practically on the Boulevard Crossing.

Under such circumstances, the duty of the street railway company to her was its common duty to all pedestrians upon its tracks at that point and no more; and that duty was substantially stated in the instructions given.

Judgment affirmed.