## Ohio Valley Mills v. Louisville Railway Company.

(Decided March 1, 1916.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1. Street Railroads—Regulation and Operation—Lookout Duty.—In the operation of a street car through the crowded streets of a city, the lookout duty is imposed upon the motorman, driver, or person in charge of the operation of the car.

2. Street Railroads—Regulation and Operation—Lookout Duty—Instructions.—If by reason of his position the motorman or person in charge of the operation of a car is unable to keep a reasonably efficient lookout, his company is negligent; but that is a question for the jury under an instruction imposing the lookout duty upon the motorman or the person in charge of the car.

3. Street Railroads—Regulation and Operation—Pleading—Negligence.—Under the rule of pleading which confines the plaintiff to the acts of negligence specified in his petition, when he attempts to detail them, an allegation that the company improperly and unskilfully handled the car was sufficient to raise the question whether it kept an efficient lookout.

4. Witnesses—Impeachment.—Under sections 597 and 598 of the Civil Code of Practice, a witness may be impeached by the party against whom he is produced, by showing that he had made statements different from his testimony; and that right is not affected by the fact that his deposition had theretofore been taken and could not be read as a deposition on the trial because it had not been filed

with the papers of the case before the commencement of the trial, as is required by section 585 of the Civil Code of Practice.

5.  Witnesses—Impeachment—Section 585 Civil Code.—Where the deposition of a witness has been taken, but can not be read as a deposition upon the trial because it was not filed with the papers of the case before the commencement of the trial, as is required by section 585 of the Civil Code of Practice, he may be impeached by the party against whom he is produced, by introducing the stenographer who reported the deposition in question, and proving by him that the witness had, in giving his deposition, made statements different from his testimony at the trial.

6.  Street Railroads—Lookout Duty—Negligence.—It is not negligence per se for a street car company to send a car through a crowded street with the motorman in the middle of the car eighteen feet from the front end of the car; the question whether he could give a proper lookout, when so situated, was for the jury.

THUM & ROY for appellant.

STRAUS, LEE & KRIEGER for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Reversing.

This is a collision case. On January 29, 1914, an automobile owned by the Ohio Valley Mills, and operated by its president, D. E. Mapother, collided with a work-car of the Louisville Railway Company at the intersection of Third and Walnut Streets, in the city of Louisville. In this action by the Ohio Valley Mills, which will hereafter be called the plaintiff, to recover $1,500.00 damages to its automobile, there was a verdict for the defendant. The plaintiff appeals.

The car of the defendant was 36 feet long. It was what is commonly known as a flat car, or work-car, with a cab about the center of the car in which the motorman stood. The front of the cab contained a glass window about eighteen inches high, through which the motorman looked in the direction he was traveling. There were four men upon the car; a motorman and a conductor, who were both in the cab at the time of the accident, and two day laborers, one seated on the rear end of the car, and the other, named Hall, was seated on the front end. The positions of these two day laborers upon either end of the car were selected by them for their own comfort or convenience, and not under any requirement or rule of the company.

The car was carrying a load of cross-ties which were piled up in front of the cab about 4½ feet high; and underneath the cross-ties were some boards which stuck out about 18 inches beyond the front end of the car.

At the time of the collision, the automobile occupied by Mapother and two ladies, was proceeding north on Third street, while the work-car of the defendant was proceeding east on Walnut street. The automobile was running at a speed of between 10 and 15 miles an hour; and Mapother testified that when he first saw the work-car it was a short distance west of the Third street property line, and his automobile was just south of the Walnut street property line. The four street corners at Third and Walnut streets are occupied by brick buildings that come flush out to the sidewalk, thus obstructing the view across the corner lots.

Mapother testified that he did not slow up for Walnut street, and that when he saw the work-car he put on full speed, increasing it to twenty-five or thirty miles an hour, and attempted to cross in front of the work-car. The automobile was, however, struck by the front end of the work-car, throwing Mapother and the two ladies who were occupying it to the ground, and partially crushing the car. Fortunately, no one of the occupants of the automobile was seriously hurt.

Mapother did not claim that he had given any signal of his approach to Walnut street, and all the witnesses introduced by the railway company testified either that they heard no signal, or that none was given. On the other hand, Mapother heard no signal from the car.

The plaintiff asks a reversal upon three grounds: (1) error of the court in failing to instruct the jury that there was a lookout duty incumbent upon the employes on the car other than the motorman; (2) error of the court in refusing to permit the plaintiff to impeach the testimony of the motorman; and (3) that the verdict and judgment are flagrantly against the evidence.

1. Following the decision of this court in Louisville Railway Co. v. Gaar, 112 S. W., 1130, where we said it was incumbent on the company to keep a lookout, but that it was not required to have its conductor and its motorman both to keep a lookout, the trial court instructed the jury that it was the duty of the motorman of defendant's work-car, as he approached Third street, to have his car under reasonable control; to run it at a

reasonable rate of speed; to give timely signals of his approach; to keep a proper lookout; and to exercise ordinary care to avoid a collision with other vehicles using the streets.

Plaintiff insists that this was error, and that the trial court should have instructed the jury that it was the duty of the defendant to have suitable lookouts. In other words, the plaintiff insists that the court erred in confining the lookout duty to the motorman, and that the instruction should have placed upon the defendant the duty of having suitable lookouts, which would also require that duty of Hall, the man sitting upon the front of the car.

We have been cited to no authority, however, to sustain the view of the plaintiff upon this point. On the contrary, in Louisville Railway Co. v. Gaar, *supra,* the court not only placed the lookout duty upon the motorman, who was at the front end of the car, but said it was error to impose a like duty upon the conductor, who was at some other place in the car and engaged in other duties.

The general rule applied in the Gaar case is also given in 36 Cyc., 1477, as follows:

"A motorman, driver, or gripman in charge of the operation of a street car is ordinarily bound to anticipate the presence of vehicles and pedestrians on the street or highway in front of or near his car, and it is his duty to keep a diligent lookout to avert injury to persons, animals, or vehicles on the track or approaching thereto, and this duty is particularly applicable at street crossings, and on streets in densely populated neighborhoods or on crowded streets, and is sometimes prescribed by statute or ordinance."

This rule placing a lookout duty upon the motorman was followed by this court in Louisville Railway Co. v. French 24 Ky. L. R., 1278, 71 S. W., 486; South Covington & Cincinnati Street Ry. Co. v. McHugh, 25 Ky. L. R., 1112, 77 S. W., 202; Paducah City Ry. Co. v. Alexander, 31 Ky. L. R., 1043, 104 S. W., 375; South Covington & Cincinnati Street Ry. Co. v. Besse, 33 Ky. L. R., 52, 108 S. W., 848, 16 L. R. A. (N. S.), 890; Louisville Ry. Co. v. Boutellier, 33 Ky. L. R., 484, 110 S. W., 357; Louisville Ry. Co. v. Johnson, 131 Ky., 277, 20 L. R. A. (N. S.), 133; Leach v. Owensboro City Ry. Co., 137 Ky., 292; Louisville Ry. Co. v. Knocke, 117 S. W., 271; Blue Grass

Traction Co. v. Ingles, 140 Ky., 488; Walker v. Louisville Ry. Co.; 158 Ky., 47; and Louisville Ry. Co. v. Vessels, 159 Ky., 664.

In Louisville Ry. Co. v. Gaar, *supra*, the court said: "The defendant had two agents on the car—the conductor and the motorman. The motorman had charge of the operation of the car. The conductor took up fares and looked after the passengers in getting on and off the car. He had general charge of the car, but it was not a part of his duty to keep a lookout, and the jury, under the instructions of the court, might have found for the plaintiff on the ground that the conductor was not keeping a lookout. It was incumbent on the defendant to keep a lookout, but it was not required to have its conductor and its motorman both to keep a lookout."

In each of these cases the lookout duty was placed upon the motorman who had charge of the movement of the car; in no case that we have found has that duty been placed upon any person not in actual charge of the car.

We do not wish to be understood as saying that cases may not arise where the motorman in charge of the car should have the assistance of other persons in giving timely warning of the approach of the car. If the motorman's view should be obstructed or insufficient by reason of his position in the car, or otherwise, and his lookout duty could not for that reason be performed without assistance, he should have the necessary assistance, otherwise he could not perform his whole duty. But the duty is his; from the very nature of the case he can not be relieved of that duty by having it imposed upon some person not in charge of the operation of the car. If, by reason of his position the motorman or person in charge of the operation of the car is unable to keep a reasonably efficient lookout, his company is negligent; but that is a question for the jury under an instruction imposing the lookout duty upon the motorman or person in charge of the car.

In placing the lookout duty upon the motorman the trial court did not commit an error; whether that duty was performed, or not performed for any reason, was for the jury to determine.

2. Appellee insists, however, that the question as to whether it failed to keep a lookout is not here, because under the rule of pleading which confines the plaintiff to the acts of negligence specified, when, as here, he at-

tempts to detail them, he cannot go into the question of appellee's failure to keep a lookout because there is no charge in the petition that it failed in that respect. We are of opinion, however, that the allegation that the appellee improperly and unskillfully handled the car was sufficient to raise that question. L., H. & St. L. Ry. Co. v. Osborne, 149 Ky., 648.

3. Section 585 of the Civil Code of Practice makes it a pre-requisite to the reading of a deposition on a trial, that it must have been filed with the papers of the case before the commencement of the trial.

Before the trial of this case the deposition of Young, the motorman, had been taken; but it had not been filed with the papers of the case.

Young testified on the trial that in approaching Third street his car was running at a speed of from one or one and a half to two miles an hour. On cross-examination at the trial he was asked if he had not stated in his deposition theretofore given, that his car was going about three or four miles an hour. The defendant, however, objected to this question, and to the use attempted to be made of the fact shown in his deposition, upon the ground that it had not been filed in the case before the beginning of the trial. The court sustained the objection; whereupon the plaintiff saved the point by making an avowal that if the witness were permitted to answer the question he would state, and the same was true, that he did make the answer imputed to him by his deposition.

Upon this ruling of the court, the plaintiff introduced the stenographer who took Young's deposition, and sought to have the stenographer, with her notes before her, contradict the witness, in the respect above mentioned; but, upon objection, this evidence was also excluded by the court. A proper avowal was then made.

The trial court seems to have rested its ruling upon the idea that the "best evidence" rule required a deposition to be produced to show what the witness therein said; and, as the deposition could not be read, because it had not been filed, it was incompetent for the plaintiff to show by the stenographer, what the witness had said when he gave his deposition.

We believe this ruling was, however, the result of a misapplication of the "best evidence" rule, since the purpose of the question was not to prove some substantive fact relevant to the issues of the case, but to im-

peach Young and thus affect his credibility as a witness to a relevant fact.

Sections 597 and 598 of the Civil Code of Practice, read as follows:

"597. A witness may be impeached by the party against whom he is produced, by contradictory evidence, by showing that he has made statements different from his present testimony, or by evidence that his general reputation for untruthfulness or immorality renders him unworthy of belief; but not by evidence of particular wrongful acts, except that it may be shown by the examination of a witness, or record of a judgment, that he has been convicted of felony.

"598. Before other evidence can be offered of the witness having made at another time a different statement, he must be inquired of concerning it, with. the circumstances of time, place and persons present, as correctly as the examining party can present them; and, if it be in writing, it must be shown to the witness, with opportunity to explain it."

This is a substantial statutory enactment of the common law rule upon the subject, which permits the contradiction of a witness by other witnesses, on facts relevant to some issue in the case. 40 Cyc., 2563; 1 Greenleaf's Ev. (16th Ed.), secs. 461f, and 462.

If Young had stated in a conversation with one or more persons that he was running his car at four miles an hour, and had thereafter sworn at the trial that he was running the car at two miles an hour, can it be doubted that the testimony of the persons to whom he made the statement would be competent to impeach his credibility as a witness by contradicting him? If a witness writes a letter which contradicts his testimony upon the trial, can it be said that the letter is not competent. to impeach him, and thus affect his credibility upon the point in question?

If, instead of referring to the deposition Young had given, counsel had asked him if on that day (giving the date) and at Mrs. Avey's office and in her presence, he had said that his car was running at a speed of three or four miles an hour, can it be doubted that Mrs. Avey would be a competent witness to contradict Young in case he had made the statement attributed to him? And, if Jones, who heard Young's statement while sitting in the

stenographer's office, is competent to impeach Young, why is not the stenographer likewise competent?

And, if a witness can be impeached concerning unsworn statements, how can it be said that he cannot be impeached because he has sworn to the statement attributed to him, thus making it competent to contradict the unsworn statements of the witness, but not competent to contradict his sworn statements, for the purpose of affecting his credibility?

The effect of the trial court's ruling was to prevent the plaintiff from contradicting Young in any way, because his deposition had not been filed. But section 585 of the Code only prohibits the reading of a deposition, which was not filed before the commencement of the trial; it does not prevent a party from proving any fact shown in a deposition not filed in time, or not filed at all, by any other method permitted by law.

It is suggested, however, that the witness has rights and that he should be protected against a practice which would permit him to be contradicted by an unfiled deposition. But if that be a sound suggestion, why should he not also be protected from being contradicted under ordinary circumstances where he makes unsworn statements in conflict with his testimony?

Furthermore, a witness needs no protection of this character; he is only required to tell the truth, not on one occasion, but on all occasions.

This question was before this court in City of Louisville v. Laufer, 140 Ky., 457. In that case the city took Laufer's deposition, but did not file it with the papers in the case, as is required by section 585 of the Code.

In disposing of that case, this court said:

"It appears that, prior to the trial, appellant took the deposition of appellee. While appellee was on the stand, appellant offered to introduce the deposition in evidence. The deposition, however, had not been filed with the papers in the case before the trial. In refusing to permit the deposition to be read the trial court simply followed the provisions of section 585 of the Code, which provides: 'No deposition shall be read on a trial, unless, before the commencement thereof, it be filed with the papers of the case.'

"After the court refused to permit the deposition to be filed, appellant's counsel sought to impeach appellee by introducing the official stenographer, who reported

the deposition in question, and attempted to prove by him that, in giving the deposition referred to, appellee made statements inconsistent with his testimony on the stand. As appellant did not lay a proper foundation for this impeaching testimony by asking appellee if, at a certain time and place, and in the presence of certain people, he had not made certain statements, it follows that the court properly excluded the testimony sought to be introduced.''

It is clear from the foregoing excerpt that the court excluded the impeaching testimony for the reason only, that appellant did not lay a proper foundation for it by asking the appellee if, at a certain time and place, in the presence of certain people, he had made the statements attributed to him; and, that it was excluded for no other reason. Of course, the rules of cross-examination as well as section 598 of the Code, require that the witness must first be given an opportunity to admit or deny the statements attributed to him, before he can be contradicted. But no such question of practice appears in the case at bar; it is not claimed that the proper foundation was not laid.

Again, in I. C. R. R. Co. v. Johnson, 115 S. W., 800, a similar ruling was made. In that case, it was sought to contradict a witness by what he had said on a previous trial, which had been taken down and appeared in the stenographer's transcript of the record, which had been used in the Court of Appeals.

The trial court refused to permit counsel to use the transcript for the purpose of contradicting the witness; but, in reversing that ruling, this court said:

''Complaint is also made of the refusal of the trial judge to permit counsel for appellant in the cross-examination of appellee to ask him concerning statements made on a former trial. The purpose of the examination was to show that the statements of the witness on this trial were contradictory of those made by him on a former trial. The record does not give the reasons of the judge for refusing this line of examination. When a witness has previously testified, it is proper, on a subsequent trial of the same case, to inquire of the witness concerning statements made by him on a former trial, and to ask him if he was not asked certain questions and made certain answers—if the purpose of the examination is to impeach the credibility of the witness, or to test his

memory. And if the evidence of the witness on a former trial has been preserved in the form of a stenographic bill of evidence, made by the official stenographer, it is competent to repeat the question and answers contained therein, and to inquire of him if he was asked such questions and made such answers; and, when this is done, the stenographer who took the notes of the testimony on the former trial may be introduced as a witness for the purpose of contradiction, and may use the notes so taken for the purpose of refreshing his recollection as to the statements made by the witness on a, former trial. Beavers v. Bowen, 80 S. W., 1165, 26 Ky. Law Rep., 291. Whether or not the official stenographer's transcribed report of the evidence, when certified to by the judge as a correct transcript, might not itself be used for the purpose of contradiction independent of the stenographer, it is not necessary to decide, as that question is not before us, although we can see no objection to this practice."

It will thus be seen that in the Johnson case, as well as in the Laufer case, the court recognized that the usual and proper way to impeach a witness is to introduce the stenographer who, was present when the contradictory statements were made, and to prove by the stenographer that they were made, with the privilege of refreshing his memory by his notes, or the transcript.

In Louisville Gas Co. v. Kentucky Heating Co., 142 Ky., 253, McDonald, a witness for the Heating Company, testified to what several witnesses had stated in their depositions, and on the witness stand, upon a former trial. The court, however, held that this was error as to the testimony of the witnesses who were not parties to the action. Of course, if they had been parties to the action their statements made at any time would have been competent as admissions against interest; but, as to those witnesses who were not parties, McDonald's testimony was not competent unless in the pending trial a foundation had been laid for impeaching them by asking them on the stand whether they had made the statements attributed to them. In other words, the ruling was similar to that in the Laufer case, as appears from the following extract from the opinion:

"On another trial, however, the court will not permit McDonald to state what other witnesses, than the defendants, stated in their depositions or while on the wit-

ness stand, unless they are asked when on the stand, if they did not make certain statements at a certain time and place, and if they deny it, McDonald or any one may be permitted to show that they did, but the court should then instruct the jury that such testimony is to go only to the credit of the witness who denied making the statements.''

In Thompson, Exor. v. Thompson, Exor., 155 Ky., 326, the stenographer was put on the stand to prove the contradictory admissions of Mrs. Thompson, and the point was made that the deposition itself could only be used for that purpose; but in overruling that contention, this court said:

''It seems to us that there can be no serious question that these admissions made by Mrs. Thompson were competent in this litigation to show who had possession and control of the trust fund. If Mrs. Thompson had told A, B or C that she had at all times the possession and control of this fund, it could not be doubted that A, B and C would be competent witnesses in this litigation to prove these admissions. Mrs. Alvey took the deposition of Mrs. Thompson in which the admissions were made, and reduced it to writing, and Mrs. Alvey testified that Mrs. Thompson made the statements appearing in her deposition. Although Mrs. Alvey did not have any particular independent recollection of these statements, it was proper to permit her to refresh her memory from an examination of the deposition of Mrs. Thompson, and to testify, after so refreshing her memory, that Mrs. Thompson made the statements appearing in her evidence. The fact that these admissions were made by Mrs. Thompson in a deposition is wholly immaterial so far as the competency of the admissions is concerned. The important consideration is whether she made the admissions; when or where or how she made them is not a matter of much consequence. That she made them is not disputed.''

Again, in North River Insurance Co. v. Walker, 161 Ky., 371, a suit on a fire policy where the defense was that the insured had burnt his property, it was held that the stenographer who had taken down the testimony in a criminal prosecution involving the same issue, could testify as to what a witness had said in the prosecution, and refresh his recollection by the transcript.

In that opinion, the court said:

"It was proper for the stenographer to use the transcript for the purpose of refreshing her recollection and aiding her memory in testifying as to what Woods stated upon the examining trial mentioned. Wilson v. Commonwealth, 54 S. W., 946, 21 R., 1333; Johnson v. Commonwealth, 70 S. W., 44, 24 R., 842; Thomas v. Commonwealth, 20 S. W., 226, 14 R., 288; Kean v. Commonwealth, 10 Bush 190, 19 Am. Rep., 63; or to read direct from the transcript of the testimony so given. Lake v. Commonwealth, 31 R., 1232, 104 S. W., 1003; Fuqua v. Commonwealth, 118 Ky., 587, 81 S. W., 923, 26 R., 420.

"The trial court, therefore, erred in its ruling refusing to allow the witness mentioned to testify concerning the evidence given by Woods upon the examining trial of the Walkers. The issue upon that trial was substantially the same as upon this, i. e.: Did the Walkers intentionally set fire to the house occupied by them in which the insured goods were stored? And the testimony given by Woods upon that hearing was directly upon that same issue and was sought to be used upon this trial as against the same parties against whom it was then given. Their interest and motive in sifting and testing Woods' testimony then given was the same upon that hearing as upon this; and their right and opportunity for cross-examination upon that occasion was unquestioned, and the witness was cross-examined by them on the issue."

Beavers v. Bowen, 26 Ky. L. R., 292, 80 S. W., 1165, was an action to recover damages for assault and battery, in which it was offered to introduce the report of the evidence taken on the examining trial, for the purpose of impeaching a witness who testified on the examining trial. The court, however, properly held that while the transcript of the evidence taken upon the examining trial was not competent to prove itself and, standing alone, it nevertheless was competent to prove the facts by the stenographer who reported his testimony upon the examining trial, and thus contradict the witness.

In that case, the court said:

"But when the purpose is to impeach a witness by proving that on another occasion he has made a different statement from his testimony at the trial, the mere introduction of the notes by the shorthand reporter who took down the evidence of the witness on the other trial, is not enough for that purpose. The extended notes of

the reporter are evidence in one event only, and that is the one alluded to. The main purpose of such notes, in circuit courts, is to supply a part of what would otherwise be in the bill of exceptions, made up for use solely of the appellate court. If they be taken and used in examining courts, and made a part of the minutes of the proceeding, their only purpose is to furnish the grand jury a clue to the witnesses and to what they will probably testify as an aid in the investigation before that body. But, where they are proposed in subsequent trials as impeaching evidence, they can be used only as memoranda to refresh the recollection of the witness testifying to such statements. (Wilson v. Commonwealth, 21 Ky. Law Rep., 1333.) And he must be able, after having his memory so refreshed, to testify to the matter as of his own recollection. The extended notes, even then, are not themselves evidence.''

This practice does not violate the rule which prohibits the reading of a deposition, even though filed before the trial, unless the witness be absent and the conditions of section 554 of the Civil Code be fulfilled. Willis v. Bank of Hardinsburg, 160 Ky., 810. But this objection goes to the deposition as a deposition containing substantive evidence, and not when it is used for the purpose of impeachment.

The same rule obtains in other jurisdictions.

In Chalmers v. United Railways Co., 153 Mo., App., 55, 131 S. W., 903, the court said:

''After the suit was instituted, defendant gave notice and took plaintiff's deposition before a notary public. Plaintiff's attorney appeared with his client at the taking of her deposition, and participated therein. After the deposition was completed, it was read over to plaintiff and she affixed her signature thereto. The deposition was never filed in the cause, but defendant's counsel sought to cross-examine plaintiff with respect to certain statements she made therein. The use of the deposition for this purpose was objected to by counsel for plaintiff on the ground that the deposition had never been filed in the cause and because it was taken before ·a notary public who was an employe of defendant's general counsel. Counsel for defendant disclaimed any purpose to introduce the deposition in evidence, as it had never been filed in the cause in accordance with the statute, but in-

sisted upon his right to cross-examine and confront plaintiff with respect to certain statements made therein as against her interests. The court, nevertheless, sustained plaintiff's objection and denied defendant's right to use the deposition even for the purpose of cross-examination to the end of contradicting material statements made by plaintiff at the trial. This was error. Though the deposition was not filed in the cause, it conclusively appeared to have been given by plaintiff and signed by her after hearing it read over, and any statements contained therein which tended to contradict material statements made by her at the trial were competent to be received in evidence. (Glasgow v. Met., etc., Ry. Co., 191 Mo., 347, 366, 368, 89 S. W., 915.)''

Likewise, in Southern Kansas Ry. Co. v. Painter, 53 Kan., 417, a deposition was tendered and parts of it were offered to be read to impeach the plaintiff, who was then on the stand, by showing that he had made statements 'in his deposition that were contradictory to his testimony upon the stand. The Kansas statute required every deposition intended to be read in evidence upon the trial to be filed at least one day before the day of the trial; and, in this case, the deposition had not been so filed.

The trial court excluded the deposition for all purposes; but upon appeal that ruling was reversed, the Supreme Court of Kansas saying:

"In support of this ruling of the court, counsel for defendant in error advances the following propositions:

" '(1) That the deposition was not admitted to have been correctly written down, but was testified by plaintiff on the trial to having been incorrectly written down. (2) That it was not filed one day before trial. (3) That the deposition was not offered as a whole. (4) That the witness Painter was present in court and testified and being so present, his deposition was not admissible. (5) That every of the portions offered did not contradict the testimony of Painter, and the deposition as a whole, taken together, was corroborative of Painter's testimony on the trial.'

"None of these reasons are sound. In order to contradict a witness on the stand with his own words written at another time and place, it is not necessary that he should admit that they were correctly written down. The fact that they occur in the deposition to which his signature is appended is at least some evidence that they

are his words. He should not sign a deposition without knowing what is contained in it. The second, third and fourth propositions are upon the theory that the deposition was offered as a deposition. That is an error. The deposition was offered for the purpose of impeaching the plaintiff's testimony, by showing that at another time and place he had made statements, under oath, inconsistent with those made to the jury from the witness stand. While the deposition could not be used as a deposition when the plaintiff was present in court and testified as a witness, like any other declaration of the witness to which his attention has been called, it could be used for the purpose of impeachment. It need not have been under oath. A letter stating the facts differently from the manner in which he testified to them would be admissible for the purpose of impeachment. So, too, would verbal statements out of court in the hearing of other witnesses, to which his attention had been called, be admissible for the same purpose. The use of such testimony is so common that it is hard to understand how an objection to it could be seriously urged.''

We conclude, therefore, that the trial court erred when it refused to permit the plaintiff to contradict Young upon a fact which we think was relevant, and not merely collateral, to an issue in the case.

4. Finally, it is insisted that the verdict was flagrantly against the evidence, because it was negligence *per se* in the defendant to send a car through a crowded street with the motorman in the middle of the car eighteen feet from the front of the car, so loaded in front of him that he was unable, as is claimed, to give a proper lookout at street crossings. But this merely comes back to the original propositions, heretofore considered, as to whether the law imposes any lookout duty upon any one except the motorman and, further, whether he performed that duty.

Judgment reversed, and action remanded for further proceedings.