# Delph v. Commonwealth.

(Decided June 22, 1934.)

C. R. LUKER for appellant.

BAILEY P. WOOTTON, Attorney General, H. HAMILTON RICE, Assistant Attorney General, and S. V. LITTLE for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

About 6:30 p. m. December 20, 1932, Arthur Delph shot and killed Elbert Southerland; for this he was charged by indictment with murder, has been convicted of manslaughter, his punishment fixed at twenty-one years imprisonment in the penitentiary, and he has appealed.

### The Shooting.

It was the duty of Delph to carry the mail bag to the railroad to hang it upon a crane put there for that purpose, and to hang a lighted lantern on the crane. He had done so. Some one took his lantern. He borrowed another one and tied it on the crane. Some one told Delph to ask Elbert Southerland about his lantern. With his pistol in his hand he went to a store, where he knew Southerland was, and these are his own words about what occurred:

"I asked him about my light. I told him he knew who did get it. He took a step something like this at me with his hand in his overall bib. There was something bright I could see in his inside coat pocket when he pulled his coat back. I stepped backwards and hit a coal bucket or nail keg and as I fell or kindly [see remarks regarding use of this word in Stepp v. Com., 241 Ky. 12, 43 S. W. (2d) 180] stumbled, the pistol discharged. I didn't have the pistol aimed at him. I didn't aim to hurt nobody."

The court gave appropriate instructions on murder, voluntary manslaughter, unintentional shooting by reckless use of a pistol, self-defense, involuntary manslaughter, accidental shooting, and reasonable doubt in

every possible phase, with proper definition of words and terms used.

### The Indictment.

The first indictment was returned on February 14, 1933, and on the same day it was quashed because it did not give the correct name of the deceased and a second was returned which did. Defendant cites sections 170 and 176 of the Criminal Code of Practice and says this is enough to reverse the judgment, but we cannot see how those sections are even remotely applicable.

### Alleged Errors in the Evidence.

The stenographic notes of the evidence of Claude Miller, given at a former trial, were read upon this trial by the stenographer, who had taken it down when given. To this defendant did not then object, but he now says he had a constitutional right to meet the witnesses against him face to face and that he did not waive this right by not objecting. · This was not erroneous. Defendant met this witness when he was on the stand before, and on this trial the stenographer not only read the thirty-three questions asked by the attorney for the commonwealth, but also the forty-eight questions asked the witness by the defendant and his answers to them. See Fuqua v. Com., 118 Ky. 578, 81 S. W. 923, 26 Ky. Law Rep. 420.

,The commonwealth on this trial sought to impeach one of its own witnesses and to lay the grounds therefor asked him if he had not testified to certain things on the former trial. The witness denied having so testified. The commonwealth never produced its impeaching evidence. Had it done so, then the court would have admonished the jury concerning the purpose of its introduction, but as that time never came there was no need for any admonition. The defendant was allowed to show by a physician, who had examined him the morning before the shooting, the physical and nervous condition of the defendant at that time; he also filed as evidence a nine-page report on his physical and nervous condition made over two years before by officials of the federal government, but when he sought to go further and show his condition in previous years the commonwealth's objection was properly sustained. The inquiry was directed to matters too remote.

Finding no error in the record, the judgment is affirmed.

Whole court sitting.