## Hoskins v. Commonwealth.

(Decided May 7, 1920.)

## Appeal from Daviess Circuit Court.

1. Seduction—Evidence to Sustain Conviction.—To sustain a conviction under section 1214 of the statutes for seduction under promise of marriage, there must be evidence to show that the female yielded to the unlawful intercourse because of and under a promise of marriage and that the promise to marry was not a conditional one; and the evidence being sufficient to support these necessary issues the court did not err in refusing to peremptorily instruct for the defendant.

2. Seduction—Character for Chastity.—The fact that the prosecutrix had at one time become unchaste will not defeat a conviction where it is shown by the evidence that for more than a reasonable time preceding the seduction she had been a woman of chaste character.

3. Seduction—Evidence—Letters.—An objection to the admission of evidence must point out that which is claimed to be incompetent and it will not avail an objecting party to make a general objection to testimony as a whole when part is competent, although other parts may be incompetent. Hence the court did not err in overruling an objection to the admission of letters from defendant to prosecutrix, parts of which were competent, although other parts may have been incompetent.

4. Criminal Law—Examination of Witness by Court.—Where the court conducted a preliminary examination of a witness in an adjoining room, to test the competency of an offered letter, defendant's attorney being present, but he being absent, the record showing affirmatively that his substantial rights were not prejudiced, the verdict will not be reversed on this account.

5. Criminal Law—Instructions.—Where there is evidence in a trial under an indictment for the commission of a statutory crime of all facts essential to a conviction under the statute as construed by the court, it is not in all cases incumbent upon the court to incorporate all such essential facts in its instructions to the jury if they are in conformity with the law and where they follow the language of the indictment, which in turn follows the language of the statute.

CLEMENTS & CLEMENTS and LOUIS I. IGLEHEART for appellant.

CHARLES I. DAWSON, Attorney General, and THOMAS B. McGREGOR, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

From a judgment of the Daviess circuit court convicting him of the offense of seducing a woman under twenty-one years of age under promise of marriage, and fixing his punishment at confinement in the state penitentiary for the term of one year, the appellant, R. Hoskins, prosecutes this appeal and seeks a reversal of the judgment upon a number of grounds stated in his motion for a new trial, which was overruled.

We will discuss only such grounds as we deem of sufficient merit to require it. It is first insisted that there should have been a peremptory instruction to the jury directing it to return a verdict of not guilty upon the ground that the evidence is insufficient to authorize a conviction of the appellant of the offense charged, which is a statutory one and is denounced by section 1214 Kentucky Statutes; insofar as it is pertinent to the question raised, it is in these words:

"Whoever shall, under promise of marrage, seduce and have carnal knowledge of any female under twenty-one years of age, shall be guilty of a felony, and, upon conviction thereof, shall be confined in the penitentiary not less than one year not more than five years."

A disposition of this question requires at our hands a brief statement of the facts as shown by the testimony.

The prosecutrix, Monamae Woodward, at the time of the commission of the alleged offense in April, 1918, was between eighteen and nineteen years of age. She was reared in Daviess county by poor parents and some time in 1916 she went to Evansville, where she had relatives, and procured a position in some factory. She was then about sixteen years of age and soon began associations with a man by the name of Gerard who, according to her testimony, engaged himself to marry her and afterwards had intercourse with her. She broke off associations as well as relations with Gerard in October, 1916, and she testified that she had lived a virtuous, upright life from that time until her seduction by the defendant, which fact is not contradicted by any witness who testified in the case, nor do we think it is contradicted by any circumstance appearing in the record. During a part of the time that Miss Woodward worked in Evansville her parents also resided there, but they returned to their old neighborhood in Kentucky some time about the first of the year 1918. Just before

Easter of that year the daughter visited her parents in Kentucky and did not go back to Evansville until perhaps the latter part of May. While she was at home the defendant began visiting her and shortly thereafter, according to her testimony, they became engaged to be married. The following Sunday after entering into that engagement the seduction which is the foundation of this prosecution occurred.

The prosecutrix again returned to Kentucky about the first of July and during that month and a part of August the defendant was frequently in company with her, at which times they discussed their prospective marriage and the promise to marry was frequently repeated. It was postponed, however, by mutual agreement until defendant returned from the army, in which he was about to enlist or be drafted. He did enter the army about September 1 of that year, and did not get his discharge until a few days before February 7, 1919, when, according to the testimony of Miss Woodward, he called upon her at her father's house, where he affectionately met her and their engagement was discussed, as was also the prospective marriage. This meeting, as well as what occurred at the time, is also testified to by a number of other witnesses introduced by the Commonwealth. The defendant, however, denies any such meeting and he established by his father, mother and brother an alibi showing that he was at his home at the time and upon the occasion when the Commonwealth witnesses say he called upon the prosecutrix. However, the record convinces us that the testimony of the prosecuting witnesses is more probably true upon this point than is that of the defendant and his witnesses.

About the first of the year 1919 the prosecutrix gave birth to a child which lived but a short while, and she says that her pregnancy was the result of the unlawful intercourse between herself and the defendant. She furthermore testified that at the time the defendant requested her to marry him she told him about her former relations with Gerard and that he answered in substance that his affections for her were such that he would not allow that circumstance to prevent the marriage.

Defendant admits his intercourse with the prosecutrix but says that it occurred in July, 1918, instead of April prior thereto, and that he at no time ever promised or solicited the prosecutrix to marry him.

Upon the essential issue of a promise of marriage a number of letters written by defendant to the prosecutrix after he went into the army and extending up to a short while before his discharge were introduced by the Commonwealth over the objections of the defendant. These letters are couched in crude language, but they are fervid with love and affection on the part of the defendant for the prosecutrix, as well as a burning desire on his part to be released from the army so that he might marry her.

Some of them show that defendant had been informed of the pregnancy of Miss Woodward and of the fact of the birth of her child, and because they show this fact is one of the grounds urged in support of defendant's objection to their introduction.

It is earnestly insisted that the evidence is not sufficient to show, or to authorize the jury to find, that the seduction with which defendant is charged was induced by any promise of marriage made by defendant, and that it is just as inferrable from the testimony that the unlawful intercourse was engaged in by the prosecutrix through lustful desire on her part, which, if true, there could be no conviction under the statute, and for this reason the peremptory instruction asked for should have been given.

After testifying to the promise of marriage the prosecutrix was asked what transpired at the time the defendant had the first act of intercourse with her, and she answered: "I couldn't tell that I don't guess, but I know that he persuaded me to, but I don't know the words that was passed—just what he said." Immediately following that answer she again stated that the defendant promised to marry her before the seduction. She was then asked—"State whether or not you submitted to this relation with him because he had promised to marry you." The defendant objected to the question, which was sustained, the court saying: "I think that is a conclusion you are asking about." The Commonwealth made no avowal as to what the answer of the witness would be if permitted to answer the question.

In one of the letters written by defendant to Miss Woodward he stated in substance that he would stand by her in all danger and said: "I won't go back on my word." On cross-examination the prosecutrix was asked

what defendant meant by the use of the word "danger" in his letter, to which she answered:

"He thought if anything happened. When he persuaded me I told him I was afraid to; I would rather not until we was married, and he said he would stand by me and would do what he said he would."

That the female in a case of this kind must yield and submit to the intercourse "because of and under the promise of marriage" and not because of a lustful desire on her part is well established. Roberson's Criminal Law, section 492, and Jordan v. Commonwealth, 180 Ky. 379.

The same authorities also hold that it is equally essential to a conviction for the crime denounced by the statute that the promise of marriage must not be a conditional one, as for instance, that the defendant would marry the female if she became pregnant as a result of the intercourse.

It is likewise true that in order to a conviction under this charge it must appear that the seduced female was of chaste character at the time of the intercourse. However, the fact that she at one time left the path of virtue and become unchaste will not defeat a conviction if the evidence shows her to be a chaste woman for a reasonable time immediately before such intercourse. Berry v. Commonwealth, 149 Ky. 398; Commonwealth v. Wright, 16 Ky. L. R. 251; Smith v. Commonwealth, 32 Ky. L. R. 137, and Hudson v. Commonwealth, 161 Ky. 257.

We do not think the evidence insufficient to sustain a conviction under any of the above enumerated requirements of the law. From the testimony introduced by the Commonwealth the defendant's promise of marriage antedated the seduction of the prosecutrix. In her testimony she states that she was persuaded to submit after the promise of marriage and upon her cross-examination she says that she told defendant that she would rather not engage in the unlawful act until they were married, whereupon he stated not only that he would stand by her, but that he would "do what he said he would."

No one of average intelligence can read the record without the irresistible conclusion that what the witness meant was that the thing defendant had stated he would do was to marry her, that he loved her and desired to make her his wife. At any rate the evidence is abund-

antly sufficient to authorize the jury to so conclude and also to find from the evidence that the prosecutrix surrendered to the defendant because of the promise of marriage and not upon condition that if she should become pregnant he would then marry her. We are furthermore convinced that the evidence establishes, and the conduct of Miss Woodward showed, that she was chaste in her character for more than a reasonable time immediately prior to the seduction complained of.

We therefore conclude that the court did not err in refusing to give the peremptory instruction contended for.

It is next insisted that the introduction of defendant's letters written to Miss Woodward while he was in the army was prejudicial error; upon the two grounds (a) that they were not sufficiently identified and (b) some of them at least referred to the fact that pregnancy had resulted from the seduction, and that under the authority of the Jordan case, *supra*, evidence of that fact is incompetent and should be excluded.

The incompetency of the testimony showing pregnancy may be admitted but it does not follow that its introduction in the way it appears in the record entitled the defendant to a new trial. His objection went to the letters as a whole when parts of them were competent, and it is the rule that the objection in such case must point out that which is claimed to be incompetent. It will not avail the objecting party to make a general objection to the testimony as a whole when a part of it is competent, although other parts may be incompetent. 16 Corpus Juris 878; Jones on Evidence, section 894; 12 Cyc. 563; Encyclopedia of Evidence, vol. 9, pages 126-127; Ellis v. Commonwealth, 146 Ky. 715; L. & N. R. R. Co. v. Graves, 78 Ky. 74; Bronston's Admr. v. Broston's Heirs, 141 Ky. 639, and Harrod v. Armstrong, 177 Ky. 317.

Some of the letters contained express evidence of the promise of marriage and the others contained statements from which such a promise might reasonably be inferred, and because of which they were competent, at least to prove that fact, and the general objection to their introduction was not sufficient to authorize their rejection although they contained the incompetent evidence referred to.

It is further insisted as a ground for reversal that the court committed error in hearing evidence and conducting a part of the trial in the absence of the defendant. This contention is based upon the following circumstance occurring at the trial.

Defendant offered to introduce a letter which .*he* wrote to the prosecutrix of date May 12, 1918, after the seduction complained of, and after she had returned to Evansville to her work. The introduction of the letter was objected to by the Commonwealth, which objection was sustained. Before offering the letter defendant's attorney developed by his cross-examination of the prosecutrix that she had received it and that it was in the handwriting of the defendant. Upon the court sustaining an objection to its introduction and, presumably at the request of defendant's counsel, the court, instead of having the jury to retire, went into an adjoining room with counsel for both sides, when counsel for defendant, in the absence of his client, asked Miss Woodward and she answered the following questions:

"Q. Miss Woodward, after you returned to Evansville in May, 1918, did you write to Mr. Hoskins? A. Yes, sir. Q. Did he answer your letter? A. Yes, sir. Q. This letter, Miss Mona, that I show you marked exhibit 'N' is the letter that you received in response to your letter is it? A. Yes, sir."

It is insisted that what occurred in the room as just stated constituted a part of the trial which, being conducted in defendant's absence, rendered the entire proceeding illegal so as to authorize a reversal of the judgment. It might well be doubted whether a preliminary examination such as this was, for the purpose of determining the relevancy of testimony, may properly be considered a part of the trial, but waiving that question, the rule is that if it affirmatively appears that the substantial rights of the defendant were not prejudiced by this character of error he may not avail himself of it on a motion for a new trial or upon appeal. Meece v. Commonwealth, 78 Ky. 586; Doyle v. Commonwealth, 18 Ky. L. R. 518; Rutherford v. Commonwealth, 78 Ky. 639; May v. Commonwealth, 153 Ky. 141; Hight v. Commonwealth, 14 Ky. L. R. 308; Bonar v. Commonwealth, 180 Ky. 338; and Lawler v. Commonwealth, 182 Ky. 185.

The reason for denying a reversal under such circumstances, as was stated in the Meece case, *supra,* is

that the right of appeal in criminal, as well as civil cases, is a statutory one and that it may be exercised only upon the conditions imposed by the statute, and under our Criminal Code, sections 340 and 353, a judgment of conviction may be reversed only when from a consideration of the whole case the court is satisfied that the substantial rights of the defendant have been prejudiced by the error complained of. In this case, however, it does not appear that defendant was denied the right to be present at the preliminary examination complained of, nor did he or his attorney make any objection thereto at the time, and under the rule adopted in the opinions in the Bonar and Lawler cases, *supra*, the error, if any, may be considered as waived.

Nor do we think the letter which was offered to be introduced was relevant to any issue involved in the case. It was in no sense a part of the *res gestae*, and having been written by defendant might be considered as self-serving only. If the contents of a prior letter written by the prosecutrix had been proven and had been relevant, the defendant's letter might also be relevant, but it was not offered under any such circumstances and we do not think the court erred in rejecting it.

Neither was the letter written by the prosecutrix on March 14, 1919, after the defendant's return from the army, and after he had declined to marry her, and relied upon as newly discovered evidence, relevant in the case even if it could be said that proper diligence was used to discover and introduce it upon the trial. The letter is too long to here insert, but suffice it to say that it contains nothing even with the aid of a constrained construction in anywise contradicting the testimony given by the prosecutrix. On the contrary, when analyzed and applied to her testimony we think the letter fortifies her oral testimony.

The last error complained of relates to the instructions given by the court to the jury. The first criticism in this respect is that the instruction, although following the language of the statute, is insufficient because the court failed to define to the jury the legal meaning of the phrase, as construed by the court in the cases, *supra,* "seduction under promise of marriage."

That the indictment is sufficient, being in the language of the statute, seems to be conceded, but the court did not say to the jury that the consent of the prosecutrix to the

seduction must have been superinduced by the promise of marriage. As stated, however, the instruction does follow the language of the indictment, and it is in the same form approved by Hobson's Instructions to Juries, sections 841 and 842, and by this court in the case of Miller v. Commonwealth, 154 Ky. 201. Where there is evidence showing a state of facts essential to a conviction (as we have determined is true in this case) we do not think it incumbent upon the court in cases like this to incorporate all the essential facts in its instructions to the jury, if they are otherwise in conformity with the law, and follow the language of the indictment which contains the descriptive terms employed in the statute creating the offense.

According to our interpretation of the testimony the evidence was amply sufficient to authorize the jury to find as a fact that the prosecutrix in this case was induced to submit to the act of unlawful intercourse with the defendant because and only because of his prior promise to marry her, although he denied that promise, which, however, is abundantly established.

We therefore conclude that the trial was a fair one, that the defendant's rights were not substantially prejudiced and that the judgment was authorized, and it is therefore affirmed.