**John D. NOE, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Nov. 26, 1965.

Eugene Goss, Charles W. Berger, Harlan, for appellant.

Robert Matthews, Atty. Gen., George F. Rabe, Asst. Atty. Gen., Daniel Boone Smith, Harlan, for appellee.

PALMORE, Judge.

Appellant, John D. Noe, was indicted for murder, found guilty of voluntary manslaughter, and sentenced to 21 years' imprisonment. On this appeal he contends that (1) the right of confrontation guaranteed him by the state and federal constitutions was violated through the admission in evidence of depositions for the Commonwealth and (2) the giving of an instruction on voluntary manslaughter was erroneous and prejudicial.

The prosecution arose out of the shooting and killing of one Skelt Smith near a place called Three Point in Harlan County on December 22, 1963. The indictment was returned in March of 1964 and trial set for September 18, 1964. On the latter date Lester Osborne and his brother Jerome Osborne, material witnesses, were present for the purpose of testifying, but in response to a motion by the Commonwealth the trial was continued and all of the witnesses present were recognized to appear on November 17, 1964. The Osbornes, however, were residents of Indianapolis, Indiana, and in anticipation of their not returning for the trial the parties agreed to the taking of their depositions, which was accomplished on September 18, 1964, in the offices of appellant's counsel at Harlan. Appellant was present and his counsel cross-examined the witnesses exhaustively.

A subpoena was issued for several of the Commonwealth's witnesses, including the Osbornes, on October 12, 1964. It was returned by the sheriff on November 11, 1964, endorsed "gone" as to each of the Osbornes. When the case was called for trial the Osbornes did not appear, and over appellant's objection the Commonwealth was permitted to read their depositions in evidence.

Under the circumstances therein prescribed, RCr 7.10, 7.12 and 7.20 authorize the taking and use of depositions in behalf of the Commonwealth in a criminal proceeding.

Section 11 of the Constitution of Kentucky provides that in all criminal prosecutions "the accused has the right * * * to meet the witnesses face to face * * *." The identical guarantee was a part of the bill of rights in each of the previous three constitutions of this state.

The Sixth Amendment of the U. S. Constitution provides that in all criminal prosecutions "the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." This fundamental right "is made obligatory on the States by the Fourteenth Amendment." Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965).

Authority for the Commonwealth to take a deposition is conditioned expressly on full protection of "the rights of personal confrontation and cross-examination of the witness by defendant." RCr. 7.12(1). In this case the depositions were taken in the presence of appellant and his counsel with unrestricted opportunity of cross-examination. The only thing missing in the confrontation was that it did not take place during the trial and in the presence of the court and jury.

According to Wigmore, there never was at common law any recognized right to an indispensable thing called confrontation as distinguished from cross-examination. Wigmore on Evidence, § 1397 (Vol. V. p. 128). "In dealing with *depositions* and *formed testimony* of deceased or absent witnesses, our Courts have almost unanimously received them, when offered against the accused in criminal prosecutions, as not being obnoxious to the constitutional provision, if the right of cross-examination had been satisfied." Id., § 1398 (Vol. V. p. 136).

In State ex rel. Drew v. Shaughnessy, 212 Wis. 322, 249 N.W. 522, 524, 525, 90 A.L.R. 368, 372, 374 (1923), the Wisconsin Supreme Court, construing a constitutional provision almost identical to ours, commented as follows:

"That section does not expressly prescribe that the requirement as to such confrontation can be satisfied only by confrontation on the trial in court; and it does not require the witnesses to face either the judge or the jurors. * * * the rule as to confrontation by witnesses is sufficiently complied with under the Constitution, as well as at common law, if the accused met the witnesses face to face, at the time that they were testifying, and if he then had the opportunity of cross-examining them. That is the primary purpose, and, when

complied with, fully satisfies the rule as to confrontation. The personal appearance of the witnesses before the judge and the jury, on the trial, is of advantage also. However, that is but a secondary purpose, and that is not a right secured to an accused at common law, or under the Constitution."

In Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895), holding that the transcript of testimony given by two witnesses at a former trial of the same case could be read in evidence for the prosecution [1] without a violation of the Sixth Amendment, the Supreme Court pointed out that many provisions of the bill of rights are subject to exceptions "recognized long before the adoption of the constitution, and not interfering at all with its spirit. Such exceptions were obviously intended to be respected. A technical adherence to the letter of a constitutional provision may occasionally be carried further than is necessary to the just protection of the accused, and further than the safety of the public will warrant. For instance, there could be nothing more directly contrary to the letter of the provision in question than the admission of dying declarations. They are rarely made in the presence of the accused; they are made without any opportunity for examination or cross-examination, nor is the witness brought face to face with the jury; yet from time immemorial they have been treated as competent testimony, and no one would have the hardihood at this day to question their admissibility. They are admitted, not in conformity with any general rule regarding the admission of testimony, but as an exception to such rules, simply from the necessities of the case, and to prevent a manifest failure of justice."

In its second preliminary draft of proposed amendments to the federal rules of criminal procedure, issued in March of 1964, the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, proposing that Rule 15 be amended to permit depositions for the government, commented as follows:

"There would seem to be no reason why the government should not have the deposition available to it on the same basis as the defendant, so long as the defendant's rights of confrontation and cross-examination are safeguarded. There may even be cases where taking a deposition may discourage attempts to intimidate or harm a government witness.

"Some twenty-two jurisdictions permit depositions to be taken by the prosecution, some with limitations as to classes of cases or a requirement of consent by the defendant * * *. Wigmore cites numerous decisions upholding the constitutionality of such provisions."

At common law the right to read a deposition against the defendant in a criminal trial may have been confined to instances in which the witness was at the time of the trial "dead, insane, too ill ever to be expected to attend the trial, or kept away by the connivance of the defendant," but in West v. State of Louisiana, 194 U.S. 258, 24 S.Ct. 650, 652, 48 L.Ed. 965 (1904), the Supreme Court held that even so, an extension of the right to cases of "nonresidence, permanent absence, and inability to procure the evidence of the witness upon the trial" would not be so fundamental a deviation as to deprive the accused of due process under the Fourteenth Amendment.

In the recent case of Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13

---

1. Effective January 1, 1965, RCr 7.22 was amended to provide that "a duly authenticated transcript of testimony given by a witness in a previous trial of the same defendant on the same charge in the same court shall be the equivalent of a deposition." This being clearly procedural, to the extent of inconsistency between RCr 7.22 and KRS 422.150 the rule prevails. At the same time the defendant's right of discovery and inspection was amplified considerably by new RCr 7.24 and 7.26.

L.Ed.2d 923 (1965), to which we have referred, the Supreme Court held that the reading of testimony given by a prosecuting witness at a preliminary hearing, or "examining trial" as it is called here and in Texas, the defendant having been present but without counsel to assist him, was a violation of the right of confrontation because the statement of the witness "had not been taken at a time and under circumstances affording petitioner through counsel an adequate opportunity to cross-examine" the witness. In so concluding, the majority opinion expressed this qualification: "The case before us would be quite a different one had Phillips' statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine." (85 S.Ct. at p. 1069).

We confess a certain sense of uneasiness at the foregoing reference to a "full-fledged hearing," especially in sequence with an earlier quotation from Turner v. State of Louisiana,[2] 379 U.S. 466, 85 S.Ct. 546, 550, 13 L.Ed.2d 424 (1965), as follows:

"In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel."

If the court meant to suggest that only testimony elicited at a public hearing conducted in a courtroom in the presence of a judge will satisfy the right of confrontation, then depositions as customarily taken in this state are out. We doubt, however, that it so intended. The common sense of the matter is that unless it be shown that the defendant's right of confrontation and

cross-examination actually was curtailed or abridged, it can make no real difference that the examination of the witness was not conducted in a public arena under the watchful eye of a magistrate.

In Kaelin v. Commonwealth, 84 Ky. 354, 1 S.W. 594, 599 (1886), holding that the defendant was not entitled to a continuance in order to take a deposition in Switzerland, a passing remark was made to the effect that although a defendant may be authorized to take and use depositions, the state may not. Considering the authorities we have cited and quoted, we are of the opinion that the comment was unfounded and incorrect, and the same is true with respect to similar dictum in Fuqua v. Commonwealth, 119 Ky. 578, 81 S.W. 923, 925 (1904).[3]

■ Appellant contends that even if it be held that depositions may be used by the Commonwealth, yet the rules do not prescribe sufficient safeguards for the defendant's protection and, further, that in this instance the depositions ought not to have been admitted without a better showing that the witnesses were indeed unavailable. Without here quoting the rules, suffice it to say that in our opinion they are adequate to the purpose. As suggested above, if the defendant's rights of confrontation and cross-examination actually are or have been impaired, he can have the deposition quashed or excluded upon a timely application and showing of the prejudicial circumstances.

■ In Phelps Roofing Company v. Johnson, Ky., 368 S.W.2d 320, 324 (1963), a civil case, we held that the trial court must be allowed a reasonable discretion in determining whether the procedural conditions precedent to the use of a particular witness's deposition have been satisfied. We think the same rule must apply in crim-

2. Turner did not involve the right of confrontation as such.

3. In which the testimony of a prosecution witness, since deceased, given at a previ-

ous trial of the same case was held admissible. Accord: See Delph v. Commonwealth, 255 Ky. 259, 72 S.W.2d 1027 (1934).

inal proceedings, regardless of which side proposes to use the testimony. One of the alternative conditions imposed by RCr 7.20 is "that the party offering the deposition had been unable to procure the attendance of the witness by subpoena." In this case the Commonwealth, probably out of an abundance of precaution, had a subpoena issued for the Osbornes, although they had been theretofore recognized to appear. It was shown on the face of the depositions that both witnesses were residents of Indianapolis and had lived there for some time. Obviously the depositions were taken in recognition of the distinct possibility or even likelihood that they would not be available later. We think the trial court exercised a proper discretion in admitting their transcribed testimony.

It is our further conclusion that the admission of the depositions did not violate any of the rights vouchsafed to the appellant by Section 11 of our constitution or by the Sixth and Fourteenth Amendments of the federal constitution.

■ The remaining point to be considered is whether it was error to instruct on voluntary manslaughter.

The evidence showed that a few minutes before the killing when appellant and the decedent, Smith, had suddenly encountered each other, appellant drew a pistol, said to Smith, "Damn you, you whipped my boy one time," and fired a shot into the ground near Smith, whereupon Smith pinned appellant's arms to his sides until he was persuaded to return the gun to his pocket. Smith then departed, but returned presently, at which reappearance the appellant again advanced on him with the pistol in his hand and "they locked up." At this point the others present departed the scene. When they came back a short time later, Smith was dead on the ground with a bullet hole through his heart.

In neither Daggit v. Commonwealth, 314 Ky. 721, 237 S.W.2d 49 (1951), nor Johnston v. Commonwealth, 170 Ky. 766, 186 S.W. 655 (1916), the two cases cited by appellant in support of his position here, was there any evidence from which a jury could reasonably have drawn an inference that the fatal act was done in sudden heat of passion or in a sudden affray. In this case the evidence was abundantly sufficient to sustain a verdict of manslaughter. Compare, for example, Harris v. Commonwealth, Ky., 389 S.W.2d 907 (1965).

The judgment is affirmed.