Roy Wayne DEAN, Appellant,

v.

**COMMONWEALTH of
Kentucky, Appellee.**

Nos. 85–SC–1031–MR, 87–SC–566–TRG.

Supreme Court of Kentucky.

Sept. 28, 1989.

Marie Allison, and Donna L. Boyce, Asst. Public Advocates, Dept. of Public Advocacy, Frankfort, for appellant.

Frederick J. Cowan, Atty. Gen., Rickie L. Pearson, and Michael L. Harned, Asst. Attys. Gen., Frankfort, for appellee.

## OPINION OF THE COURT

Appellant Roy Wayne Dean was convicted in Todd Circuit Court of first degree burglary, first degree rape, and murder. He received two twenty year sentences on the rape and burglary charges and was sentenced to death for murder. He appeals his conviction as a matter of right.

The Todd County Grand Jury convened in October of 1984 to hear evidence and return indictments in the death of Brenda Church. Mrs. Church's mostly nude body was found lying on the couch in her home by her husband when he returned from work in the afternoon of September 27, 1984. The victim's hands were bound behind her back, and she had apparently been sexually assaulted. She was shot seven times in the head through a pillow found over her face, and once in the chest. Appellant was indicted in the burglary-rape-murder, as was one Jimmy Haley, who was never tried.

Dean was sent by court order to the Kentucky Correctional, Psychiatric and Psychological Center [hereinafter KCPC], where he was examined at length by Dr. Phillip Johnson. Despite deficits in a number of psychological and cognitive areas pertinent to his ability to stand trial, appellant was found competent. Dr. Johnson's testimony at the pre-trial competency hearing was given by videotaped deposition. This deposition was also offered and admitted at trial. Because several issues which will be discussed in this opinion concern the deposition, we elaborate on its contents here.

Dr. Johnson testified that the purpose of his evaluation was to provide needed medical treatment, to determine appellant's competency to stand trial, and to determine criminal responsibility at the time of the crime. Dr. Johnson administered routine psychological tests, and along with other KCPC staff, monitored appellant's behavior. On the basis of the tests, appellant's life history, 156 days of observation, and earlier psychological evaluations in which appellant was diagnosed as moderately mentally retarded, schizophrenic and in need of regular medication, Dr. Johnson concluded that appellant was moderately depressed, may have had a substance abuse problem, and had limited coping ability.

Testing indicated that appellant functioned at a mild level of mental retardation, scoring a full scale intelligence quotient of 59. However, the deponent suspected appellant may have deliberately produced scores on his intelligence test which reflected an intelligence level lower than his actual intelligence. Dr. Johnson learned that appellant had taken an earlier edition of the Wechsler Adult Intelligence Scale in 1981 and 1977 and on the basis of these tests was assigned intelligence quotients of 81 and 48–51, respectively. Because he believed the score of 81, placing appellant in the low normal range of intellectual functioning, was the most accurate score, he concluded Dean may have been malingering during the most recent evaluation, presumably to avoid criminal prosecution.

Dr. Johnson opined that appellant was competent to stand trial. Although appellant's understanding of courtroom procedure and appraisals of likely outcome of the case was limited, these deficits could be corrected by counsel and appellant could assist in his defense. The deponent also testified that "Mr. Dean was criminally responsible for any illegal activity that may have occurred with relation to the current charges."

Dr. Johnson stressed that his determination of competency was made at the time of the report, several months prior to the date of his deposition.

Defense counsel examined the deponent at length about various anti-depressant and anti-seizure medications prescribed for appellant during his stay at KCPC, which may have lowered the level of his patholo-

gy as measured by the tests. He also questioned Doctor Johnson about other aspects of his testimony, including appellant's possible malingering on intelligence test scores.

Discussion of the facts concerning Dean's trial on charges of burglary, rape and murder follows as necessary in treating appellant's arguments to reverse his convictions. Appellant raises thirty-four issues on his appeal as a matter of right, and he presents two additional issues in his appeal of the trial court's overruling his motion for new trial based on newly discovered evidence. We have reviewed all of appellant's assignments of error. Because we reverse appellant's conviction and remand his cause to the trial court for a new trial, we will not address in this opinion the merits of all alleged errors. We will discuss the following issues which necessitate reversal or which may recur in a second trial:

1) Whether appellant's right to confrontation and to be present at all stages of trial was violated,

2) Whether the prosecutor's comments denied appellant a fair trial,

3) Whether the use of the word "recommend" to describe the jury's sentencing function denied appellant due process of law,

4) Whether defense counsel denied appellant's right to a defense of innocence by presenting an insanity defense,

5) Whether the guilt-phase instructions denied appellant a fair trial, and

6) Whether the trial court should have granted a new trial because of newly discovered evidence.

## I. WAS APPELLANT'S RIGHT TO CONFRONTATION AND TO BE PRESENT AT ALL STAGES OF TRIAL VIOLATED?

Appellant claims his right to be present at several pretrial and trial proceedings was denied in violation of the Sixth Amendment and the due process clause of the Fourteenth Amendment to the United States Constitution and Section Eleven of the Kentucky Constitution. While his claims regarding a hearing on the prosecutor's motion for appointment of co-counsel and a portion of voir dire are without merit, we find that appellant's absence during the depositions of two key witnesses violated the rights guaranteed under Section Eleven of the Kentucky Constitution, as well as Rule of Criminal Procedure 7.12 [hereinafter RCr] and RCr 8.28.

The Kentucky Constitution, Section Eleven provides:

"In all criminal prosecutions the accused has the right to be heard by himself and counsel; ... to meet the witnesses face to face" Ky. Const. Sec. 11.

The right to be present is specifically defined in RCr 8.28: "(1) The defendant shall be present at ... *every critical stage* of the trial" (emphasis added).

The right of confrontation and cross-examination in depositions is guaranteed to the defendant by RCr 7.12.

"(1) The order authorizing the taking of a deposition shall contain such specifications as will fully protect the rights of *personal confrontation and cross-examination by the defendant."* Id. (emphasis added).

In *Noe v. Commonwealth,* Ky., 396 S.W.2d 808 (1965), our predecessor Court explained:

"Authority for the Commonwealth to take a deposition is conditioned expressly on full protection of 'the rights of *personal* confrontation and cross-examination of the witness by defendant.' RCr 7.12(1)." *Id.* at 809 (emphasis added).

The defendant's right to be present to confront his accusers is also a personal right under the 6th and 14th Amendments to the United States Constitution.

"It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him'.... The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Faretta v. California,* 422 U.S.

806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975).

While we do not make any findings regarding the violation of defendant's federal constitutional rights, we are persuaded by the logic and wisdom of those who by constitutional authority have commented upon them. In *Noe v. Commonwealth,* Kentucky's high court found compliance with RCr 7.12 because *"the depositions were taken in the presence of appellant* and his counsel with unrestricted opportunity of cross-examination." 396 S.W.2d at 809. (emphasis added).

 We hold that because the right to be present and to confront is personal to the accused under Section 11 of the Kentucky Constitution, and more particularly under RCr 7.12, only the defendant can waive this right. The waiver must be sufficiently clear "as to indicate a conscious intent." *Powell v. Commonwealth,* Ky., 346 S.W.2d 731, 734 (1961). In the case at bar, appellant's counsel waived appellant's right to be present at the depositions of the two prosecution witnesses. There is no indication in the record that it was appellant's conscious intent to waive this right and his consequent right to cross-examination. Counsel's waiver being ineffective, there was no waiver. Thus, deposing these witnesses in appellant's absence violated Section 11 of the Kentucky Constitution, RCr 7.12(1) and by implication RCr 8.28(1). Appellant was not present; nor was he afforded the right to confront and cross-examine the witnesses called to testify against him.

 The Commonwealth asserts that appellant failed to demonstrate any prejudice by his absence, thus rendering the error flowing from violations of the Kentucky Constitution and the Criminal Rules harmless. We do not agree.

The deposition of Ray Rigsby, appellant's father-in-law, was received into evidence during the Commonwealth's case-in-chief. While defense counsel conducted extensive cross-examination of Rigsby during the deposition, many areas of his testimony could have been best probed by appellant. Mr. Rigsby's testimony that appellant turned red and stomped the floor when asked if he, appellant, had heard about the victim's killing was alone very damaging.

More troubling is appellant's absence from Dr. Phillip Johnson's deposition. This deposition was the principal evidence introduced at the pre-trial hearing held to determine appellant's competency to stand trial. Dr. Johnson's deposition testimony was also admitted as evidence at trial, having been introduced at the opening of the prosecutor's case-in-chief. His testimony that appellant was not legally insane at the time of the alleged offense, and that appellant may have had a history of malingering in psychological and intelligence testing was particularly damaging to the defense.

Both witnesses' testimony by deposition played a significant role in the overall weight of the evidence against Dean. It is impossible to predict with certainty what effect recognition of appellant's right to be present and to confront these witnesses during their live testimony would have had in the outcome of this case. We cannot find the error harmless.

## II. DID THE PROSECUTOR'S COMMENTS DENY APPELLANT DUE PROCESS OF LAW?

 Appellant complains of a long list of allegedly improper statements by the prosecutor to the jury. Again the tension between prosecutorial zeal and the defendant's right to a fair trial is manifest. See *Morris v. Commonwealth,* Ky., 766 S.W.2d 58 (1989), for a recent decision addressing the problem. From the catalog of 14 improprieties identified, the following illustrations best depict the Commonwealth attorney's flagrant conduct.

First, while cross-examining appellant during the guilt phase of the trial, the prosecutor elicited testimony from him, the accused, that the perpetrator of the crime should be put to death.

"Q. Isn't it true that you did that to her (photograph of victim shown to witness).
A. No sir. It's cruel whoever done that.

Q. And *whoever did it should get the electric chair for it, shouldn't he?*

A. *Yeah.* If I could find who did it he wouldn't get no chair.

Q. They should get the chair though for whoever did it, shouldn't they?

A. *They should die.*

Q. Whoever did it tied up her arms like that (photograph shown to witness)?

A. Cruel as hell. *The man ought to die in hell."* TE XII 1118–19. (emphasis added).

Appellant maintains his 5th Amendment privilege against self-incrimination under the United States Constitution was violated by questioning him about punishment during the guilt phase of his bifurcated trial. Appellant also claims he was denied his due process right to a fundamentally fair trial under the 14th Amendment and his right to a rational and reliable sentencing under the 8th Amendment.

Second, the commonwealth attorney misinformed the jury during his closing argument in the penalty phase of the trial by telling them they had an *obligation* to the judge to impose the death penalty if they found an aggravating, but no mitigating, factor. Citing *Gall v. Commonwealth*, Ky., 607 S.W.2d 97, 112 (1980), appellant correctly asserts there is no such obligation. He claims this misstatement of the law contributed to arbitrary sentencing in violation of the 8th and 14th Amendments.

Next, Appellant contends the prosecutor delivered an improper "Golden Rule" argument in his closing, thus prejudicing the defendant impermissibly and denying him fundamental fairness.

"Can you imagine the fear that went through the life of Brenda Church on this day.... Can you imagine the fear and embarrassment ... the terror ... the humiliation ...?" TE XII 1201–02. Following the introduction to each of these rhetorical questions, the commonwealth's attorney filled in the explicit inflammatory details of the victim's rape and murder. Then he concluded:

"... But, ladies and gentlemen, if there ever was a case where the death penalty was deserved this is it".... *Id.* at 1203.

In *Lycans v. Commonwealth*, Ky., 562 S.W.2d 303 (1978), we condemned such an argument. "The remarks of a Commonwealth's Attorney to cajole or coerce a jury to reach a verdict is error." *Id.* at 306.

In a related argument appellant claims the prosecutor improperly questioned the victim's husband in order to establish facts from which to argue for sympathy for Brenda Church. Mr. Church testified about the victim's children, her memberships in Allegree Homemakers, 4–H Council and the Extension Council, as well as her regular church attendance. Arguing at the close of the guilt phase, the prosecutor summed up.

"Ladies and gentlemen, who was Brenda Church? Brenda was an attractive 43 year old housewife who lived with her husband for 18 years. They were happily married.... She was active in community affairs, she was in Homemakers, and each Sunday she attended worship at the Westside Church of Christ.

. . . . .

He killed a fine wife, he killed a fine citizen, a fine Christian lady." TE XIII 1160–61, 1185.

While the prosecutor's conduct did not parrot the egregious display we disapproved in *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534, 542–43 (1988), it is yet another instance of impermissible glorification of the victim. *See Benge v. Commonwealth*, 265 Ky. 503, 97 S.W.2d 54 (1936). When combined with sensationalizing the victim's suffering, such a tactic tends to pressure the jury to decide the issue of guilt or innocence on considerations apart from the evidence of the defendant's culpability, and thus cannot be approved.

The commonwealth attorney's strategy to stir passion and prejudice appears to have created the desired effect in the case at bar. We recognize his claim to reasonable latitude "to persuade the jurors the matter should not be dealt with lightly." *Lynem v. Commonwealth*, Ky., 565 S.W.2d 141, 145 (1978). However, a commonwealth attorney has special responsibilities to uphold the principles underlying our

system of justice and should conduct his prosecution accordingly. *See Taulbee v. Commonwealth*, Ky., 438 S.W.2d 777 (1969); *Goff v. Commonwealth*, 241 Ky. 428, 44 S.W.2d 306 (1931). Our criminal rules were established "to provide for a just determination of every proceeding." RCr 1.04. "The principle that one accused of crime is entitled to a fair and impartial trial has become ingrained in Anglo–Saxon jurisprudence." *Raney v. Commonwealth*, 287 Ky. 492, 153 S.W.2d 935, 937 (1941). We find the commonwealth attorney's representations and misrepresentations set out above undermined appellant's right to a fair trial guaranteed implicitly by Section 2 and Section 11 of the Kentucky Constitution; · and thus require reversal of his conviction.

Before turning to the issue raised regarding the use throughout trial of the word "recommend" in conjunction with the jury's sentencing function, we briefly address an argument related to appellant's claims of prosecutorial misconduct.

▇ Appellant's wife, Tina Dean, was called to testify before the Grand Jury that indicted Roy Dean. She immediately asserted her testimonial privilege, as recognized in KRS 421.210(1). In *Estes v. Commonwealth*, Ky., 744 S.W.2d 421 (1987), we distinguished the privilege to refuse to testify for or against one's spouse from the testimonial disqualification prong of KRS 421.210(1), which disqualifies testimony as to confidential communications made between husband and wife during marriage. The commonwealth attorney rather skillfully persuaded Mrs. Dean to testify by assuring her she would not be questioned about confidential communications between herself and appellant.[1] She then testified in full.

On the first day of trial, appellant filed a motion in limine to suppress Mrs. Dean's testimony at trial. The trial court deferred ruling. She again testified without further objection about the events of the days immediately before and after the victim's murder.

Appellant claims his federal due process rights were violated because of alleged prosecutorial misconduct at the grand jury proceeding and the trial court's failure to grant Mrs. Dean's privilege at trial. Appellant also asserts the confidential communications disqualification applied to portions of his wife's testimony. We do not find prejudicial error.

The prosecutor's confusion between the testimonial privilege the witness asserted and the confidential communications rule he assured her would not be violated effectively baffled appellant's wife. Whether the prosecutor obtained Mrs. Dean's waiver through his own misunderstanding of the distinctions between the two privileges, which misunderstanding he has a duty to

---

**1.** The following exchange was recorded.

Tina Dean: Are you the judge, which one is the judge?

Prosecutor: Ma'm?

Tina Dean: Are you the judge, or whatever ...

Prosecutor: No, I'm ... the Commonwealth Attorney.

Tina Dean: Well, *I had rather not testify in this case, if on behalf of being Roy Wayne Dean's wife, unless I have to. Do I have to?*

Prosecutor: Uh, you have the, you have the right, at this time, to remain silent, and of course anything, the questioning will not involve anything that Roy Wayne Dean told you. We're only going to inquire about facts as you know them, and not any conversation which you had with your husband, uh, have you been advised by an attorney not to testify, before the Grand Jury?

Tina Dean: No, *I have uh, been told that I do not have to testify against my husband.*

Prosecutor: But you do not have to testify as to anything your husband said, and we certainly will not ask you any statements of what he said, but, uh, basically, what, uh, Mr. ... wants to ask you is some of things that he has previously discussed with you, and I don't think anything, you don't plan on asking her anything any additional, do you?

NO AUDIBLE RESPONSE

Prosecutor: Just what he has previously discussed with you. That alright?

Tina Dean: I guess so.

Prosecutor: Anytime you wanna, anytime you wanna stop testifying you certainly tell the ladies and gentlemen of the Grand Jury and then, of course, the (unintelligible) here, we will, we will consider that. But, just he wants you ask you, just discuss with you the things that he has previously discussed with you. Understand?

Tina Dean: Uh-huh."

Transcript of Grand Jury, October 15, 1984, 6–7.

eliminate, or through a deliberate attempt to wear down a lay witness without benefit of counsel, the commonwealth's attorney has come notably close to violating the Rules of Criminal Procedure.

Rule 5.14 requires the prosecutor to provide legal advice to the grand jurors. Rule 5.12 requires the grand jury foreman to report the refusal of a witness to testify to the circuit court. Upon a witness's clear assertion of a valid testimonial privilege, the better practice is for the commonwealth attorney to bring the matter to the foreman's attention so that the foreman can properly state the refusal to the court, as required by RCr 5.12. A witness who asserts a valid privilege should not be required to defend her statutorily protected desire not to testify in a stand-off of wits with the prosecutor.

### III. WAS APPELLANT DENIED DUE PROCESS OF LAW BY THE USE OF THE WORD "RECOMMEND" TO DESCRIBE THE JURY'S ROLE IN SENTENCING?

■ Appellant claims the jury's sense of responsibility for imposing the death penalty was impermissibly minimized by the prosecutor telling potential jurors during voir dire and closing argument that they would recommend the penalty to the judge. Thus his conviction must be reversed under the authority of *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), and *Ward v. Commonwealth*, Ky., 695 S.W.2d 404 (1985). Appellant also contends the trial court's instructions using "recommend" violated the 6th, 8th, and 14th Amendments to the United States Constitution. We agree that the pattern established by the drumbeat of "recommend" did indisputably denigrate the jury's responsibility for determining an appropriate sentence for appellant.

Each particular reference to the jury's sentencing responsibility on the murder charge as a recommendation did not rise to a clear attempt by the prosecutor (or the court) "to divert from the minds of the jurors their true responsibility." *Ward*, 695 S.W.2d at 408. The words "recom-

mend a penalty to the judge" or words to that effect were used consistently during the individual voir dire of each prospective juror to describe the jury's duty in the penalty phase of the trial. Typically, the panel members were also asked whether "you will have any hesitancy to recommend to Judge Fuqua that the death penalty be imposed in this case?" Among the selected jurors, several were also asked if they could consider "imposing" the death penalty. The prosecutor did not overtly attempt to shift responsibility for a death sentence to the trial judge, appellate courts or the Governor, as in *Ward*.

Unfortunately, the references to the jury "recommending" a sentence did not end upon the conclusion of voir dire. The prosecutor reminded the jury during his closing argument of his earlier questions to the jurors about whether they could recommend the death penalty. The prosecutor asked the jury no fewer than three times to recommend to the judge the imposition of the death penalty, and made several other references to recommending to the judge that he impose the sentence. By this time the notion that juries *recommend*, but judges *impose* sentences was undoubtedly planted firmly in the juror's minds.

This Court recently decided a case, the application of which to the case *sub judice* would surely require reversal. In *Tamme v. Commonwealth*, Ky., 759 S.W.2d 51 (1988), we prospectively banned the use of the word "recommend" "with reference to a jury's sentencing responsibilities in voir dire, instructions or closing argument." *Id.* at 53. Because appellant was tried before our decision in *Tamme*, we refer to the standard set out in *Ward v. Commonwealth*.

> "It is the responsibility of each juror to decide whether the defendant will be executed, and *they shall not be informed* either directly or *by implication* that this responsibility can be passed along to someone else." 695 S.W.2d at 408.

The Commonwealth cites *Harper v. Commonwealth*, Ky., 694 S.W.2d 665, 678 (1985), in support of its contention that no error resulted from their attorney's "rec-

ommendation" references. In that case, in which the prosecutor's argument and the court's instructions contained many "recommendation" references, the Court found "there must be a look at the entire scenario in deciding this question." *Id.* at 670. Because the prosecutor also clearly emphasized the jury's responsibility in final argument, e.g., " 'you're pulling the switch,' " the Court found the remarks did not denigrate the function of the jury in imposing the death penalty. *Id.* The Commonwealth argues in the case at bar that the "entire scenario" of argument fully informed the jury of its responsibilities. We do not agree.

In *Ward*, we recognized the trial court's responsibility to inform the jury of its duty.

"Also, should any inadvertent reference implying a diminution of the jury's duty in fixing a death penalty creep into any case, the trial judge should immediately inform the jury that their duty to fix the death penalty should be considered as if there were no possibility of review by any source." 695 S.W.2d at 408.

Not only did the court in appellant's trial fail to perceive that the repeated references to the jury's "recommendation" warranted an admonition, but the trial court highlighted the diminution of the jury's responsibilities in the drafting of the instructions submitted to the jury. The guilt phase instructions informed the jury that they would *fix* Dean's punishment for a term of years on the first degree manslaughter, first degree rape and first degree burglary counts. Of course, the jury made no decision as to penalty on the murder charge during the guilt phase.

The penalty phase instructions pertaining to the murder charge contained seven references to the jury *recommending* a sentence, and each of the four options on the verdict forms contained the word "recommend." We disapproved such a practice in *Grooms v. Commonwealth*, Ky., 756 S.W.2d 131, 141 (1988), observing,

"We think any reasonable juror would readily perceive a difference in his ultimate responsibility when he must fix a punishment or when he must only make a recommendation to someone else whose responsibility it is to fix the punishment." *Id.*

Thus, under the authority of our decisions in *Ward v. Commonwealth* and *Grooms v. Commonwealth*, we find that the pattern of using the word "recommend" throughout trial to diminish the jury's sentencing responsibility had a cumulative prejudicial effect.

## IV. DID DEFENSE COUNSEL DENY APPELLANT'S RIGHT TO A DEFENSE OF INNOCENCE BY PRESENTING AN INSANITY DEFENSE?

Appellant claims that the Sixth Amendment to the United States Constitution guarantees a defendant the right to personally control his defense, including what type of defense to assert. He complains this right was violated when defense counsel presented a defense of insanity over appellant's objection, undermining appellant's defense of innocence. He maintains he was prejudiced by the incompatibility of these two defenses, which formed a suspect appeal to the jury. The appearance of duplicity was further heightened by the prosecutor's ridicule of the insanity defense in his closing argument.

We decline to reverse appellant's conviction on this ground, because the conflict asserted here was more apparent than real. It is true that defense counsel's examination of defense witnesses contained elements designed to support both the reasonable doubt and insanity defenses. However, counsel never expressly conceded appellant's guilt. In making out a case for insanity, defense counsel relied heavily on Dr. Johnson's deposition, presented by the Commonwealth in its case-in-chief to *rebut* appellant's anticipated insanity defense.[2]

---

2. Defense counsel apparently requested and then assented to the Commonwealth's motion to have appellant examined at KCPC. Appellant was also examined by another psychologist, Dr. Arthur L. Burrows. He concurred with Dr. Johnson's findings. Dr. Burrows was not called to testify, but his conclusions appear in the record as an exhibit to Dr. Johnson's deposition.

Moreover, counsel did comply in part with appellant's wishes, as shown by his questioning of both prosecution and defense witnesses by which he attempted to refute the Commonwealth's proof.

In his opening and closing statements, counsel told the jury about appellant's objection to using the insanity defense. He questioned appellant before the jury in such a manner as to allow appellant to fully assert his innocence as well as to protest his insanity. Finally, defense counsel devoted the majority of his closing argument to casting doubt on the prosecution's proof.

We recognize, however, that counsel was in a difficult position in balancing the wisdom of appellant's decision to waive the defense of insanity in view of the considerable documentation of his below average intelligence and mental disorders against a defendant's right "to make decisions central to his defense." *Frendak v. United States*, 408 A.2d 364, 375 (D.C.1979) (citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). Therefore, if this conflict between appellant and his counsel arises in a retrial of his case, the following guidelines should be followed. References are made below to well-reasoned extra-jurisdictional authority, although they are not binding on this Court. *See generally, Treece v. State*, 547 A.2d 1054, 1057–63 (Md.1988) (reviewing state and federal caselaw on defendant's decision-making power regarding use of insanity defense).

First, counsel must respect the defendant's authority to make critical decisions concerning his defense. *Code of Professional Responsibility*, EC 7–7, adopted by SCR 3.130. Although defense counsel generally controls strategic and tactical decisions, after consultation with the client, the decision to assert the defense of insanity may seriously compromise a defendant's chosen alternative defense, as well as threaten his liberty and reputational interests and other legal rights. *Frendak*, 408 A.2d at 375–78.

"[T]he defendant ordinarily has the ultimate decision when the issue at hand involves a choice that will inevitably have important personal consequences for him or her, and when the choice is one a competent defendant is capable of making." *Treece*, 547 A.2d at 1054.

If, after counsel has fully informed the defendant of relevant considerations bearing on the decision to forego the insanity defense, the defendant insists on an ill-advised course of action, counsel should bring the conflict to the attention of the trial court by seeking a determination of whether the accused is capable of voluntarily and intelligently waiving the defense.

"[T]he trial judge must conduct an inquiry designed to assure that the defendant has been fully informed of the alternatives available, comprehends the consequences of failing to assert the defense, and freely chooses to raise or waive the defense." *Frendak*, 408 A.2d at 380.

Even if a defendant is found competent to stand trial, he may not be capable of making an intelligent decision about his defense. Under our statutes, one is competent to stand trial if he or she possesses the "capacity to appreciate the nature and consequences of the proceedings against one [and] to participate rationally in one's own defense." KRS 504.060(4). It is possible that a defendant found competent to stand trial might be unable to comprehend the consequences of choosing not to use the insanity defense, thus rendering the defendant incapable of intelligently waiving the defense. The accused might also suffer a mental disability which would make it difficult or impossible "to recognize his or her present condition." *Frendak*, 408 A.2d at 380 n. 29.

If the trial judge determines the defendant is incapable of voluntarily and intelligently waiving the defense of insanity, counsel must proceed as the evidence and counsel's professional judgment warrant. The inquiry and findings of the court will be on the record, should review later be necessary. If the defendant is found capable of waiving the defense, both counsel and the trial court must proceed according to the defendant's wishes.

## V. DID THE TRIAL COURT'S INSTRUCTIONS DENY APPELLANT A FAIR CAPITAL TRIAL?

Appellant complains of numerous omissions in the trial court's guilt-phase instructions, two of which should specifically be remedied upon retrial if warranted by the evidence. In *McClellan v. Commonwealth*, Ky., 715 S.W.2d 464, 469 (1986), we said, "[t]he jury should be instructed as to the definition of the state of mind which constitutes an extreme emotional disturbance." We also set out a working definition.

"Extreme emotional disturbance may reasonably be defined as follows: Extreme emotional disturbance is a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes. It is not a mental disease in itself, and an enraged, inflamed, or disturbed emotional state does not constitute an extreme emotional disturbance unless there is a reasonable explanation or excuse therefor, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under circumstances as defendant believed them to be." *Id.* at 468–69.

Whether extreme emotional disturbance is used as an element of the murder, manslaughter, or mitigating circumstance instructions, the jury should be instructed as to its definition.

Similarly, the jury should be instructed on the statutory definition of mental illness if the jury may find appellant guilty but mentally ill.

" 'Mental illness' means substantially impaired capacity to use self-control, judgment or discretion in the conduct of one's affairs and social relations, associated with maladaptive behavior or recognized emotional symptoms where impaired capacity, maladaptive behavior or emotional symptoms can be related to physiological, psychological or social factors." KRS 504.060(6).

## VI. DID THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION FOR A NEW TRIAL?

Finally, appellant complains in a separate but consolidated appeal because the trial court overruled a motion for new trial based on newly discovered evidence that a commonwealth expert lied about his credentials while testifying under oath. Because we remand this case for a new trial, and because we are confident the commonwealth will not use perjured testimony upon retrial, we find this issue to be moot.

## CONCLUSION

We have reviewed all of appellant's allegations of error and find those not discussed in the opinion to be lacking in merit, mooted by the disposition of this case, or unlikely to recur upon retrial. The judgment of the trial court is reversed and the case is remanded to the Todd Circuit Court for proceedings consistent with this opinion.

STEPHENS, C.J., and COMBS and LAMBERT, JJ., concur.

LEIBSON, J., concurs in a separate concurring opinion.

VANCE, J., concurs in result only.

WINTERSHEIMER, J., dissents in a separate dissenting opinion in which GANT, J., joins.

LEIBSON, Justice, concurring.

I concur in the result. I agree the conviction should be reversed and agree in part with the reasoning set forth in the Majority Opinion. I respectfully disagree with the Opinion, as follows:

## I. DEAN'S RIGHT TO BE PRESENT AT DEPOSITION

This is a right that can be waived, if not tacitly, certainly if done by defendant's counsel knowingly and explicitly. Such was the case here.

*Richmond v. Commonwealth*, Ky., 637 S.W.2d 642 (1982), is specific authority re-

futing the statement in the Majority Opinion that "the right to be present and to confront [the witness at deposition] is personal to the accused" and "only the defendant can waive this right." In *Richmond,* we held to the contrary:

> "A great flap is raised over the use of [the] deposition. The only constitutional aspect of it is that [the defendant] was not present so as to exercise his right of confrontation when the testimony was given. As we have said, however, obviously his absence was by choice. He could have been there. It is our opinion that he waived the right of confrontation." *Id.* at 646.

The Majority Opinion fails to confront this holding in *Richmond,* which is squarely in point.

*Powell v. Commonwealth,* Ky., 346 S.W.2d 731 (1961), cited as authority, is inapposite. In *Powell,* it was the defense attorney, not the accused, who was absent, and it was at the time when the verdict was returned and received by the court. We stated "the right to poll the jury in criminal cases is an essential part of the right of trial by jury," and we should not assume counsel would waive this right. *Id.* at 733.

Here the waiver was explicit, and was made by counsel, presumably competent to judge whether his client was needed. I see no reason, constitutional or otherwise, to create a rule that counsel cannot waive his client's presence at depositions.

## II. THE WIFE'S TESTIMONIAL PRIVILEGE

I agree that the wife's testimonial privilege was violated at the Grand Jury proceedings. This probably constituted a defect in the indictment, but such defect is waived if not timely raised.

Mrs. Dean did *not* refuse to testify at trial. She testified as both a prosecution witness and a defense witness without asserting her privilege. Such privilege is personal to the witness, and as such, is not subject to a motion in limine made by the defendant. Further, in *Taylor v. Commonwealth,* Ky., 413 S.W.2d 614, 615 (1967), we stated that "we know of no reason or authority which would require the court to admonish" the spouse of her testimonial privilege.

## III. THE INSANITY DEFENSE

I would reverse appellant's conviction on this ground. As stated in the Majority Opinion, citing *Treece v. State,* 313 Md. 665, 547 A.2d 1054, 1058 (1988), the defendant has the right to make "the ultimate decision" as to whether or not to rely on the insanity defense, disregarding his counsel's advice if he chooses to do so. To me this means if the defendant is competent to stand trial, he is competent to waive this defense which is almost always, and necessarily, inherently inconsistent with denying one committed the act. The Majority Opinion states the conflict between the claim of innocence and the insanity defenses was more apparent than real. I disagree and point to the effective way the Commonwealth Attorney ridiculed the accused's claim of innocence, using the insanity defense as a weapon.

I fully agree with the Majority Opinion that at a new trial the "trial judge must conduct an inquiry designed to assure that the defendant has been fully informed of the alternatives available, comprehends the consequences of failing to assert the defense, and freely chooses to raise or waive the defense." *Frendak v. United States,* 408 A.2d 364, 380 (D.C.1979).

Following this reasoning, permitting these inconsistent defenses at the last trial, over the defendant's objection, was prejudicial error. Contrary to the Majority Opinion, I fail to see how a defendant can be found competent to stand trial if the trial judge finds he is "unable to comprehend the consequences of choosing not to use the insanity defense."

## IV. THE INSTRUCTION ON THE DEFINITION OF EXTREME EMOTIONAL DISTURBANCE

I continue to protest the *McClellan* definition of extreme emotional disturbance, which the Majority Opinion directs will be utilized at the next trial. *McClellan v.*

*Commonwealth*, Ky., 715 S.W.2d 464 (1986). Extreme emotional disturbance, if present, represents diminished mental capacity reducing the criminality of the act. Instead of defining it in these terms, *McClellan* defines it in terms equivalent to temporary insanity: "to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance, rather than from evil or malicious purposes." [Emphasis added].

The underlined words require the *absence* of criminality, rather than simply diminished criminality as contemplated by the Penal Code.

We should utilize the present case to redefine extreme emotional disturbance in line with the structure of the Penal Code, by deleting the terminology underlined above, so that the parts will fit as the Penal Code prescribed.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because Dean received an essentially fair trial and was not denied any of his rights.

Dean's right to be present at the deposition was waived by his counsel knowingly and explicitly. *Powell v. Commonwealth*, Ky., 346 S.W.2d 731 (1961) as cited by the majority is inapposite because in that case it was the defense attorney and not the accused who was absent and it was at the time the verdict was returned to the court. That case turned on the right of the defendant to be present at an essential part of the jury trial. Here the waiver was explicit and made by counsel. I do not believe we should now create a rule that defense counsel cannot waive his client's presence at a deposition.

The majority seizes upon the legally slender situation presented here to create a new potentially broad rule which is inappropriate.

The right of confrontation relates only to the actual trial. The testimony of a witness from a prior preliminary hearing may be admissible against the defendant provided the confrontation clause is not violated.

The presence of the accused is not necessary during preliminary proceedings which do not affect the questions of guilt or innocence. *See Harris v. Commonwealth*, Ky., 315 S.W.2d 630 (1958); *Hoskins v. Commonwealth*, 188 Ky. 80, 221 S.W. 230 (1920). Kentucky law has long held that courts must be careful to preserve the rights of a defendant to be present at every stage of the trial beginning with the swearing of the jury and ending with the return of the verdict. A pretrial deposition does not meet that standard.

I also disagree with the analysis by the majority of the wife's testimonial privilege. It might be that her testimonial privilege was violated at the grand jury proceedings, and this may have constituted a defect in the indictment which may be waived if not timely raised. However, it is not the basis of a reversal. The wife did not refuse to testify at trial. She testified both as a prosecution witness and as a defense witness without asserting her privilege. Such privilege is personal to the witness and is not subject to a motion in limine by the defendant. There is no reason or legal authority which requires the trial judge to admonish the spouse regarding testimonial privilege. *Taylor v. Commonwealth*, Ky., 413 S.W.2d 614 (1967).

In addition I find the majority opinion's analysis of the representations by the prosecutor at trial to be unconvincing as to any infringement on the defendant's right to a fair trial. The prosecutor's arguments were nothing more than an attempt to persuade the jury that the matter before them should not be dealt with lightly. *Lynem v. Commonwealth*, Ky., 565 S.W.2d 141 (1978).

Dean received a fundamentally fair trial. There is no perfect proceeding, all that is required is fairness. *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974); *McDonald v. Commonwealth*, Ky., 554 S.W.2d 84 (1977).

GANT, J., joins in this dissent.